## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:

**CENTRAL OKLAHOMA**
**UNITED METHODIST**
**RETIREMENT FACILITY, INC.**
*d/b/a Epworth Villa*,

Case No. 23-12607

Chapter 11

Debtor.

## FIRST AMENDED PLAN OF REORGANIZATION

*/s/ Sidney K. Swinson*
Graydon Dean Luthey, Jr., OBA No. 5568
Sidney K. Swinson, OBA No. 8804
Mark D.G. Sanders, OBA No. 22922
**GABLE & GOTWALS, P.C.**
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
Telephone: 918.595.4800
Facsimile: 918.595.4990
dluthey@gablelaw.com
sswinson@gablelaw.com
msanders@gablelaw.com

*Attorneys for Debtor*

{2700982;}

# INTRODUCTION

Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa (hereafter, "Debtor" or "Epworth Villa"), as debtor in the above-captioned Chapter 11 case, proposes this Plan of Reorganization pursuant to Section 1121(a) of the Bankruptcy Code for the resolution of outstanding claims against, and interests in, Epworth Villa.

Reference is made to the *Disclosure Statement to Accompany Debtor's Plan of Reorganization* for a discussion of the Debtor's history and assets, a summary and analysis of this Plan, and certain related matters, including the distributions to be made under this Plan and the risk factors relating to consummation of this Plan.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## SECTION 1  - DEFINITIONS AND INTERPRETATION.

### 1.1     *Definitions*.

Certain capitalized terms used in this Plan are defined in this Section.  Other capitalized terms are defined within the body of other Sections of this Plan.  Any capitalized terms not otherwise defined within this Plan shall have the meaning accorded to them by the Bankruptcy Code or the Bankruptcy Rules (and shall be construed in accordance with the rules of construction thereunder).

The following terms used herein shall have the respective meanings below:

*"Accrued Professional Compensation Claim"* means, at any date, all accrued fees and reimbursable expenses for services rendered by a Retained Professional in the Chapter 11 Case through and including such date, to the extent such fees and expenses have not been previously paid whether under a retention order with respect to such Retained Professional or otherwise.  To the extent that there is a Final Order denying some or all of a Retained Professional's fees or expenses, such denied amounts shall no longer be considered an Accrued Professional Compensation Claim.

*"Administrative Expense Claim"* means any Claim for costs and expenses of administration pursuant to Section 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtor's Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930; (c) claims for the value of any goods received by the Debtor within twenty (20) days before the Petition Date and Allowed in accordance with Section 503(b)(9) of the Bankruptcy Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to Sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

"**Administrative Expense Claims Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date or such other date ordered by the Court; provided, however, that the deadline for Filing requests for payment of Administrative Expense Claims arising under Section 503(b)(9) of the Bankruptcy Code will be the Claims Bar Date.

"**Affiliate**" means, with respect to any entity, an "affiliate" as defined in Section 101(2) of the Bankruptcy Code as if such entity were a debtor.

"**Allowed**" means that portion of any Claim or Interest  (a) for which no timely proof of Claim or Interest has been Filed, but which has been listed by the Debtor in the Schedules in a liquidated, non-contingent and undisputed amount**;** (b) as to which a proof of Claim or Interest has been timely Filed in a liquidated amount, so long as (x) no timely objection to the allowance of such Claim or Interest has been Filed, or (y) if such objection has been Filed, such objection has been overruled by a Final Order (but only to the extent such objection has been overruled)**;** (c) as to which a Final Order has been entered allowing such Claim or Interest; (d) with regard to an Ordinary Course Administrative Expense Claim, that portion of the subject Claim that the Debtor, in its fiduciary capacity as Debtor-in-Possession, has determined, as evidenced by payment, is a valid post-Petition Date obligation; or (e) otherwise allowed under this Plan.

An "Allowed Claim" shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law, other than with respect to the Bond Claims.  Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Case is not an Allowed Claim.  Unless otherwise specified in this Plan, in Section 506(b) of the Bankruptcy Code or by Final Order of the Court, the term "Allowed Claim" shall not, for purposes of Distributions under this Plan, include interest, fees (including attorneys' fees), costs or charges on such Claim from and after the Petition Date.

"**Assets**" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Debtor's Estate pursuant to Section 541 of the Bankruptcy Code.

"**Avoidance Actions**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or the Estate under Sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code and under similar state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions or remedies.

"**Ballot**" means the ballots upon which Holders of Impaired Claims entitled to vote on this Plan may indicate their acceptance or rejection of this Plan in accordance with the instructions regarding voting.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter applicable to this Chapter 11 Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Court, as applicable to the Chapter 11 Case.

"**Bar Date Order**" means the Final Order, entered by the Court establishing the deadline for the filing of Proofs of Claim in the Chapter 11 Case.

***"Business Day"*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in the State of Oklahoma.

***"Cash"*** means cash and cash equivalents including, without limitation, checks and wire transfers.

***"Causes of Action"*** means any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, asserted or which may be asserted by or on behalf of the Debtor and/or the Estate, including: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Avoidance Action; and (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code.

***"Chapter 11 Case"*** means Epworth Villa's Chapter 11 case pending in the Court under Case No. 23-12607.

***"Claim"*** has the meaning provided in Section 101(5) of the Bankruptcy Code.

***"Claims Bar Date"*** means the deadline for Filing Proofs of Claim, which unless established otherwise by Final Order of the Court for a particular Claim (including Claims against the Debtor arising under Residency Agreements), will be in accordance with the Bar Date Order.

***"Claims and Noticing Agent"*** means Stretto in its capacity as claims and noticing agent for the Debtor.

***"Claims Objection Bar Date"*** means the deadline for objecting to a Claim, as set by the Court.

***"Claims Register"*** means the official register of Claims and Interests maintained by the Claims and Noticing Agent.

***"Class"*** means a class or category of Claims or Interests as classified and described in Section 3 of this Plan.

***"Collateral"*** means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

***"Confirmation Date"*** means the date on which the clerk of the Court enters the Confirmation Order on the Court's docket in the Chapter 11 Case.

*"Confirmation Hearing"* means the hearing(s) before the Court on confirmation of this Plan, as such hearing may be continued from time to time.

*"Confirmation Order"* means the order entered by the Court confirming this Plan in accordance with Chapter 11 of the Bankruptcy Code and approving the Disclosure Statement and the other solicitation materials in respect of this Plan.

*"Consenting Holders"* means, collectively, (a) holders of the Existing Bond Claims that are parties to the Plan Support Agreement, and (b) any holder of Existing Bonds that executes a joinder to the Plan Support Agreement pursuant to its terms.

*"Court"* means the United States Bankruptcy Court for the Western District of Oklahoma, to the extent it may exercise jurisdiction in this Chapter 11 Case on reference from the United States District Court for the Western District of Oklahoma; and otherwise, the United States District Court for the Western District of Oklahoma; or if either such Court ceases to exercise jurisdiction over this Chapter 11 Case, such other court that exercises jurisdiction over this Chapter 11 Case.

*"Creditor"* means a Holder of a Claim.

*"Cure"* or *"Cure Claim"* means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract assumed by the Debtor under Sections 365 and 1123 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to Section 365(b)(2) of the Bankruptcy Code.

*"Debtor-in-Possession"* means the Debtor in its capacity as debtor-in-possession in these Chapter 11 Case pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

*"DIP Bondholder Representative"* means Hamlin Capital Management, LLC, as representative of the bondholders issued under the indenture by and between the Debtor-in-Possession and BancFirst as DIP Trustee, which holders are providing post-petition funding to the Debtor-in-Possession under the DIP Credit Agreement.

*"DIP Claim"* means any Claim against the Debtor arising under the DIP Credit Agreement.

*"DIP Credit Agreement"* means the Priming Superpriority Debtor-in-Possession Credit Agreement by and between the Debtor-in-Possession and the DIP Lender.

*"DIP Lender"* means BancFirst, Oklahoma City, as bond trustee for the holders of the bonds issued under the indenture by and between the Debtor-in-Possession and BancFirst as DIP Trustee, which holders are providing post-petition funding to the Debtor-in-Possession under the DIP Credit Agreement.

*"DIP Motion"* means the Debtor's Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing; (2) Authorizing Debtor in Possession to Use Cash Collateral; (3) Providing Adequate Protection; (4) Granting Liens, Security Interests and Superpriority Claims, and (5) Scheduling a Final Hearing, to be filed on the Petition Date.

"*DIP Order*" means any order, whether interim or final, authorizing the Debtor (i) to obtain postpetition financing and (ii) use the cash Collateral of the Existing Bond Trustee during the Chapter 11 Case.

"*Disallowed*" means any Claim, or any portion thereof, that (a) has been disallowed by Final Order or pursuant to a settlement among the Debtor and the Holder thereof; or (b) for which a proof of claim was required to be filed and that has not been filed by the Claims Bar Date and has not otherwise been deemed timely filed pursuant to a Final Order of the Court. "Disallow" and "Disallowance" will have correlative meanings.

"*Disbursing Agent*" means any entity acceptable to the Debtor and the Consenting Holders in its capacity as a disbursing agent under this Plan.

"*Disclosure Statement*" means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be altered, supplemented, modified, or amended from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

"*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Distribution Record Date*" means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to this Plan, which will be the date that the Confirmation Order is entered by the Court, or such other date specified in the Confirmation Order.

"*Effective Date*" means the first Business Day selected by the Debtor, with the consent of the Existing Bond Trustee, on which (a) the conditions specified in Section 10 of this Plan have been either satisfied or waived in accordance with the terms of Section 10, and (b) no stay of the Confirmation Order is in effect.

"*Entrance Fee Escrow*" means the escrow account holding entrance fees received from certain Residents, which account is maintained by The Trust Company of Oklahoma, on behalf of such Residents pursuant to the Escrow Agreement.

"*Escrow Agreement*" means that certain Escrow Agreement by and between Epworth Villa and The Trust Company of Oklahoma, as escrow agent.

"*Estate*" means the estate created in the Chapter 11 Case containing all property and other interests of the Debtor pursuant to Section 541 of the Bankruptcy Code.

"*Exculpated Party*" means, collectively, in each case in its capacity as such on and after the Petition Date: (a) the Debtor; (b) the Reorganized Debtor; (c) the Existing Bond Trustee; (d) the Consenting Holders; (e) the DIP Lender; (f) the DIP Bondholder Representative; and (g) with respect to each of the foregoing entities in clauses (a) - (f), such entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants,

investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Executory Contract"* means all contracts and unexpired leases to which the Debtor is a party that are subject to assumption or rejection under Section 365 of the Bankruptcy Code.

*"Existing Bond Claims"* means any Claim arising from, or related to, the Existing Bond Documents with respect to the Series 2004B, 2005A and B, and 2012A Bonds, including any and all outstanding principal, which is owed in the aggregate amount of $78,458,000, plus any and all accrued interest, fees (including, without limitation, professional fees), expenses, costs and other charges payable with respect to the Series 2004B, 2005A and B, and 2012A Bonds, which Claims are Allowed pursuant to the DIP Order and under the terms of this Plan.

*"Existing Bond Documents"* mean the Existing Bond Indenture, the Existing Bond Mortgage, and all other documentation evidencing the Existing Bonds and obligations thereunder.

*"Existing Bond Indenture"* means the Bond Indenture, by and between the Issuer and the Existing Bond Trustee dated as of March 15, 1997, as amended and supplemented by the Supplemental Bond Indenture dated as of December 1, 2000, as further amended and supplemented by the Second Supplemental Bond Indenture dated as of December 1, 2004, as further amended and supplemented by the Third Supplemental Bond Indenture dated as of December 1, 2005, and as further amended and supplemented by the Fourth Supplemental Bond Indenture dated as of December 1, 2012, as it may from time to time be further amended or supplemented pursuant to Article IX of the original Bond Indenture.

*"Existing Bond Mortgage"* means the Mortgage and Security Agreement, by and between Epworth Villa and the Issuer dated as of March 15, 1997, as amended and supplemented by the Supplemental Mortgage and Security Agreement dated as of December 1, 2000, as further amended and supplemented by the Second Supplemental Mortgage and Security Agreement dated as of December 1, 2004, as further amended and supplemented by the Third Supplemental Mortgage and Security Agreement dated as of December 1, 2005, and as further amended and supplemented by the Fourth Supplemental Mortgage and Security Agreement (with Power of Sale) dated as of December 1, 2012 , as it may from time to time be further amended or supplemented pursuant to Article XII of the original Bond Mortgage.

*"Existing Bond Trustee"* means BancFirst, Oklahoma City, as bond trustee pursuant to the Existing Bond Indenture.

*"Existing Bonds"* means the outstanding bonds that are the Oklahoma County Finance Authority Revenue and Refunding Bonds, Series 2004B, 2005A, 2005B, and/or 2012A (Epworth Villa Project).

*"Facility"* means the real estate described in the Existing Bond Indenture and the buildings, improvements and fixtures (excluding equipment which is not fixtures and which may be removed without damage to the real estate) constructed or to be constructed on such real estate and all substitutions therefor, additions thereto and replacements thereof, commonly known as Epworth Villa, Oklahoma City, Oklahoma.

***"File," "Filed," or "Filing"*** means file, filed, or filing with the Court or its authorized designee in this Chapter 11 Case.

***"Final Order"*** means an Order or judgment of the Court (a) as to which the time to appeal, petition for certiorari, or move for re-argument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, re-argument, rehearing or new trial has been sought, as to which (i) such Order of the Court shall have been affirmed by the highest court to which such Order was appealed; (ii) certiorari has been denied as to such Order; or (iii) re-argument or rehearing or new trial from such Order shall have been denied, and the time to take any further appeal, petition for certiorari or move for re-argument, rehearing or new trial shall have expired without such actions have been taken.

***"General Administrative Claim"*** means any Administrative Expense Claim, other than an Accrued Professional Compensation Claim and claims for fees and expenses under 28 U.S.C § 1930(a).

***"General Unsecured Claim"*** means any Claim asserted against the Debtor that is not (a) a Secured Claim, (b) a Claim entitled to priority under the Bankruptcy Code or any Final Order of the Court, (c) an Existing Bond Claim, or (d) a Former Resident Refund Claim (as described in Section 4.4 of this Plan).

***"Holder***" means the legal or beneficial holder of a Claim or Interest.

***"Impaired"*** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Section 1124 of the Bankruptcy Code.

***"Insurance Policies"*** means, collectively, all of the Debtor's insurance policies.

***"Interest"*** means the interest of any Holder in an equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code.

***"Issuer"*** means the Oklahoma County Finance Authority, an Oklahoma Public Trust.

***"Lien"*** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

***"Order"*** means an order or judgment of the Court as entered on the Court's docket.

***"Ordinary Course Administrative Expense Claim"*** means an Administrative Expense Claim incurred in the ordinary course of business of Epworth Villa, as Debtor-in-Possession, including, without limitation, a Claim arising under 28 U.S.C. § 1930.

***"Petition Date"*** means September 28, 2023 -- the date on which the Debtor commenced this Chapter 11 Case.

*"Plan"* means this Chapter 11 plan of reorganization, including all appendices, exhibits, schedules and supplements hereto (including any appendices, exhibits, schedules and supplements to this Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Plan Support Agreement.

*"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and/or exhibits to this Plan that are necessary to the implementation of this Plan, in each case subject to the terms and provisions of the Plan Support Agreement, to be filed at least 10 days prior to the Confirmation Hearing, and as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules and the Plan Support Agreement.

*"Plan Support Agreement"* means that certain Plan Support Agreement entered into as of September 28, 2023 by and among the Debtor, the Consenting Holders, and any subsequent entity that becomes a party thereto pursuant to the terms thereof, as amended and restated from time to time, which Plan Support Agreement is attached as **Exhibit 7** to the Disclosure Statement.

*"Plan Term Sheet"* means that certain term sheet describing the key terms of a plan of reorganization for the Debtor, attached as **Exhibit 1** to the Plan Support Agreement.

*"Priority Claim"* means any Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim, Accrued Professional Compensation Claim, including Claims under Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

*"Pro Rata"* means the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims in such Class or Classes, unless this Plan otherwise provides.

*"Professionals"* means all professionals employed in the Chapter 11 Case pursuant to Sections 327, 363 and 1103 of the Bankruptcy Code.

*"Proof of Claim"* means a proof of Claim filed against the Debtor in the Chapter 11 Case.

*"Released Parties"* means, collectively, the following entities: (i) the Debtor, (ii) the Reorganized Debtor; (iii) the Existing Bond Trustee; (iv) the Consenting Holders; (v) the Issuer; (vi) the DIP Lender; (vii) the DIP Bondholder Representative; and (viii) with respect to each of the foregoing entities specified in clauses (i) through (vii), such entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; provided that in each case, an entity shall not be a Released Party if it:  (a) elects to opt out of the releases contained in this Plan; or (b) timely Files with the Court on the docket of this Chapter 11 Case an objection to the releases contained in this Plan that is not resolved before the Confirmation Date.

*"Releasing Parties"* means collectively, the following entities: (i) each Holder of a Claim or interest who has not chosen, by marking the appropriate box on the Ballot and/or Opt-Out Form, as appropriate, to opt out of the releases provided for in Section 11.10 of this Plan; (ii) the DIP Lender; (iii) the Existing Bond Trustee; (iv) the Consenting Holders; (v) the Issuer; and (vi) with respect to each of the foregoing entities specified in clauses (i) through (v), such entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of its respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

*"Reorganized Debtor"* means the Debtor, as reorganized pursuant to and under this Plan on or after the Effective Date, and its successors.

*"Residency Agreements"* means those certain agreements by and between Epworth Villa any current, former, or prospective Residents, providing (a) certain rights of occupancy in the Facility, including any reservation agreement or other agreement or contract reserving rights of occupancy; (b) for certain services to such Resident; and/or (c) establishing and delineating certain entrance fees and refund rights.

*"Residents"* means all current, former, or prospective residents of the Facility who are or were parties to a Residency Agreement.

*"Restructuring Transaction"* means the transaction through which, among other things, the Existing Bonds shall be exchanged for newly-issued Series 2023 Bonds, as more specifically described in Section 10.01 of the Disclosure Statement and Section 6 of this Plan, and which constitutes the treatment, *inter alia*, of the Existing Bond Claims under this Plan.

*"Retained Professional"* means any entity:  (a) employed in the Chapter 11 Case under a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, under Sections 327, 328, 329, 330, 331, or 1103 of the Bankruptcy Code (other than an ordinary course professional retained under an Order of the Court); or (b) for which compensation and reimbursement has been Allowed by the Court under Section 503(b)(4) of the Bankruptcy Code.

*"Secured Claim"* means (a) any Claim that is secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court Order, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as determined pursuant to Section 506(a) of the Bankruptcy Code or, (b) any Claim that is subject to setoff under Section 553 of the Bankruptcy Code, subject to the extent of the amount subject to setoff, as provided in Section 506(a) of the Bankruptcy Code, including any Claim that the Holder of which validly elects to treat as secured pursuant to Section 1111(b) of the Bankruptcy Code, or (c) any Claim that is Allowed as such pursuant to this Plan.

*"Series 2023 Bond Documents"* means, collectively, those documents that are included as Bond Documents in the Plan Supplement, including the Series 2023 Bond Indenture, the Series 2023 Loan Agreement, the Series 2023 Bond Mortgage, and the Series 2023 Continuing Covenants

Agreement, together with any other document or agreement delivered as security for or relating to the Series 2023 Bonds or the Debtor's obligations under the foregoing documents, and any and all future renewals and extensions or restatements of, or amendments or supplements to, any of the foregoing.

*"Series 2023 Bond Indenture"* means that certain Bond Trust Indenture by and between the Series 2023 Issuer and the Series 2023 Bond Trustee, substantially in the form to be included in the Plan Supplement and attached to the Disclosure Statement.

*"Series 2023 Bond Mortgage"* means that certain Mortgage and Security Agreement by the Debtor in favor of the Series 2023 Issuer and the Series 2023 Bond Trustee, substantially in the form to be included in the Plan Supplement.

*"Series 2023 Bond Trustee"* means BancFirst, Oklahoma City, as bond trustee pursuant to the Series 2023 Bond Indenture.

*"Series 2023 Bonds"* means, collectively, the Series 2023A Bonds, Series 2023B Bonds, and Series 2023C Bonds.

*"Series 2023A Bonds"* means those certain bonds to be issued by the Series 2023 Issuer in the amount of $6,000,000, as more particularly described in Section 6.2 of this Plan.

*"Series 2023B Bonds"* means those certain bonds to be issued by the Series 2023 Issuer in the amount of $66,700,000, as more particularly described in Section 6.2 of this Plan.

*"Series 2023C Bonds"* means those certain bonds to be issued by the Series 2023 Issuer in the amount of $13,724,671, as more particularly described in Section 6.2 of this Plan.

*"Series 2023 Continuing Covenants Agreement"* means that certain Continuing Covenants Agreement between the Debtor and the Series 2023 Bond Trustee, substantially in the form to be included in the Plan Supplement and attached to the Disclosure Statement.

*"Series 2023 Issuer"* means the Oklahoma County Finance Authority, in its capacity as issuer pursuant to the Series 2023 Bond Indenture.

*"Series 2023 Loan Agreement"* means that certain Loan Agreement between the Debtor and the Series 2023 Issuer, substantially in the form to be included in the Plan Supplement and attached to the Disclosure Statement.

*"Stretto"* means Bankruptcy Management Solutions, Inc., d/b/a Stretto.

*"Unimpaired"* means, with respect to a Claim or Interest, a Class of Claims or Interests that is "unimpaired" within the meaning of Section 1124 of the Bankruptcy Code.

*"United States Trustee"* means the Office of the United States Trustee for the Western District of Oklahoma.

*"Voting Agent"* means Stretto in its capacity as voting agent for the Debtor.

*"Voting Deadline"* means the date set by the Court by which all parties in interest must submit their Ballots to vote on this Plan.

*"Voting Record Date"* means the date of entry of the Disclosure Statement Order unless a different date is stated in the Disclosure Statement Order.

    **1.2**    ***Interpretation, Application of Definitions and Rules of Construction***.  Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, supplemented, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

    **1.3**    ***Computation of Time***.  Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Court.  Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter unless otherwise specified herein.

    **1.4**    ***Controlling Document.***  In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, this Plan shall control, except that the Series 2023 Bond Documents shall control with respect to the Series 2023 Bonds.  In the event of an inconsistency between this Plan and the Confirmation Order, the Confirmation Order shall control.

## SECTION 2 – UNCLASSIFIED CLAIMS.

    **2.1**    ***General Administrative Expense Claims***.  Subject to the provisions of Bankruptcy Code Sections 328, 330(a), and 331, and except to the extent that a Holder of an Allowed General Administrative Claim and the Debtor before the Effective Date (or the Reorganized Debtor after the Effective Date) agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive distribution of the full unpaid amount of such Allowed General Administrative Claim in Cash in the following manner:

        (a) if such Allowed General Administrative Claim is based on liabilities that the Debtor incurred in the ordinary course of business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Claim and without any further action by any Holder of such

Allowed General Administrative Claim, on the later of the Effective Date or the date such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter;

(b) if such Allowed General Administrative Claim is based on liabilities other than as set forth in (a) above, if such Allowed General Administrative Claim is due on or prior to the Effective Date, on the Effective Date, or, if such Allowed General Administrative Claim is not due as of the Effective Date, on the date that such Allowed General Administrative Claim becomes due or as soon as reasonably practicable thereafter;

(c) if a General Administrative Claim is not Allowed as of the Effective Date, on the date that is no later than thirty (30) days after the date on which an order allowing such General Administrative Claim becomes a Final Order of the Court or as soon as reasonably practicable thereafter; or

(d) at such time and upon such terms as set forth in a Final Order of the Court.

To be eligible to receive Distributions under this Plan on account of a General Administrative Expense Claim *that is not otherwise Allowed by this Plan*, a request for payment of an Administrative Expense Claim must have been, or be, filed with the Court on or before the Administrative Expense Claims Bar Date. Any Administrative Expense Claim that is not asserted in accordance herewith shall be deemed Disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of the Debtor's Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**2.2** *Accrued Professional Compensation Claims*. All Professionals seeking payment of Accrued Professional Compensation Claims shall (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in the Chapter 11 Case by the date that is forty-five (45) days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Court within five (5) Business Days after the date that such Claim is Allowed by order of the Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Accrued Professional Compensation Claim and the Reorganized Debtor. Any Accrued Professional Compensation Claim that is not asserted in accordance with Section 2 of this Plan shall be deemed Disallowed under this Plan and shall be forever barred against the Debtor, the Debtor's Estate, or any of its Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

**2.3** *Post-Confirmation Fees and Expenses*. Except as otherwise specifically provided in this Plan, from and after the Confirmation Date, the Debtor and Reorganized Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and consummation of this Plan incurred by the Debtor. Upon the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered

after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**2.4** *DIP Claims.* On the Effective Date, each the Holder of an Allowed DIP Claim shall receive payment in full in Cash of the Allowed amount of such DIP Claim. Upon the payment in full in Cash of the Allowed DIP Claim, as provided for in the DIP Credit Agreement and the Order approving the DIP motion, and in accordance with the terms of this Plan, all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Court or any other entity.

**2.5** *United States Trustee Statutory Fees*.  The Debtor and the Reorganized Debtor, as applicable, will pay the undisputed fees payable under 28 U.S.C § 1930(a), including fees, expenses, and applicable interest payable to the United States Trustee, for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  Any disputed fees will be paid in the amount determined to be due by a Final Order.

## SECTION 3  - CLASSIFICATION OF CLAIMS AND INTERESTS.

Except as otherwise set forth in this Plan, all Claims against, and Interests in, the Debtor are placed in particular Classes.  The Debtor has not classified the special administrative priority Claims described in Section 2 of this Plan.

The following table classifies Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  This Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that any such Claim is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

Subject to all other applicable provisions of this Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 of this Plan.  This Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

The following table designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with Section 1126 of the Bankruptcy Code, and (iii) deemed to accept this Plan.

| Class | Claims and Interests | Status | Entitled to Vote |
|-------|---------------------|--------|------------------|
| 1 | Existing Bond Claims | Impaired | Yes |

{2700982;}                                                    13

| 2 | Insured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| 4 | Former Resident Refund Claims | Unimpaired | No (Deemed to Accept) |
| 5 | Interests | Impaired | Yes |

## SECTION 4  - TREATMENT OF CLAIMS AND INTERESTS.

**4.1**    ***Existing Bond Claims (Class 1)***.  Class 1 consists of the Existing Bond Claims against the Debtor.  Debtor has stipulated to Allowance of the Existing Bond Claims in the aggregate amount of at least $80,435,759.03.  Unliquidated, accrued and unpaid fees and expenses of the Existing Bond Trustee and its professionals incurred through the Petition Date and not paid during the Chapter 11 Case are also part of, and shall be added to, the aggregate amount of the Existing Bond Claims.  Eighty-five percent (85%) of the Existing Bonds plus accrued and unpaid interest through June 30, 2023 shall be exchanged for the Series 2023B Bonds in the principal amount of $66,700,000, and the remaining fifteen percent (15%) of the outstanding principal of the Existing Bonds, or $9,800,000, plus remaining accrued and unpaid interest on the Existing Bonds through the Effective Date shall be exchanged for the Series 2023C Bonds.

Upon the terms, and subject to the conditions, set forth in this Plan, in full and final satisfaction, settlement, release, and discharge of the Existing Bond Claims, each Holder of an Existing Bond Claim shall receive its Pro Rata share of the Series 2023B Bonds and Series 2023C Bonds on the Effective Date or as soon as practicable thereafter.  Accordingly, Class 1 Claims are Impaired.

**4.2**    ***Insured Claims (Class 2)***.  Class 2 consists of all unsecured Claims, if any, which arise from or relate to alleged conduct or circumstances occurring or existing prior to the Effective Date where a policy of liability or indemnity insurance provides coverage for the benefit of the Debtor.

In full and final satisfaction of each Allowed Class 2 Claim, as of the Effective Date, the automatic stay and/or discharge injunction of Bankruptcy Code Sections 362 and/or 524(a), respectively, shall be deemed modified, as necessary, to permit each Holder of a Claim in Class 2 to (i) seek liquidation of such Claim by final judgment of a court of competent jurisdiction, or otherwise, and (ii) collect and satisfy such Claim (only) from an issuer of a policy of indemnity insurance that provides coverage for the Claim.  Holders of Class 2 Claims shall receive no other consideration under this Plan on account of such Claims.  Class 2 Claims are Impaired.

**4.3**    ***General Unsecured Claims (Class 3).***  Class 3 consists of all General Unsecured Claims against the Debtor.

Except to the extent that a Holder of an Allowed General Unsecured Claim against the Debtor agrees to a different treatment of such Claim, on the Effective Date or as soon as reasonably

practicable thereafter, the Debtor will pay an amount equal to 100% of the Allowed Amount of such Class 3 Claim, in each case subject to all defenses or disputes the Debtor may assert as to the validity or amount of such claims. Accordingly, Class 3 Claims are Unimpaired.

*4.4* **Former Resident Refund Claims (Class 4).** Class 4 consists of all claims for refunds of entrance fees pursuant to Residency Agreements of *former* Residents.

In full satisfaction of an Allowed Resident Refund Claim, on the later of the Effective Date or the date on which the Former Resident Refund Claim becomes due and payable under the applicable Residency Agreement, each Holder thereof shall receive payment of 100% of the Allowed Amount of such Claim in accordance with the applicable Residency Agreement. To the extent the Former Resident Refund Claim is due and payable on the Effective Date, such Claim shall be satisfied from the Entrance Fee Escrow pursuant to Section 6.7 herein. Accordingly, Class 4 Claims are Unimpaired.

**4.5** *Interests (Class 5).* Class 5 consists of all Interests. The only Interest Holder in Epworth Villa is Epworth Living, Inc.

The treatment of the equity Interest in Epworth Villa, held by Epworth Living, Inc., will be determined by the actions of the Impaired classes of Claims: if any Class of Impaired Claims does not accept this Plan, then the Class 5 Interests shall be cancelled and extinguished under this Plan; if all Classes of Impaired Claims accept this Plan, then the Class 5 Interest Holder shall retain its Interests. Accordingly, Class 5 Interests are Impaired.

## SECTION 5 - CRAMDOWN.

If all applicable requirements for confirmation of this Plan are met as set forth in Section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the Court confirm this Plan in accordance with Section 1129(b) of the Bankruptcy Code on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, this Plan.

## SECTION 6 - MEANS FOR IMPLEMENTATION OF THIS PLAN.

**6.1** *Implementing Actions*. On the Effective Date, the Debtor, the Reorganized Debtor or any other entities shall take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate, this Plan, including: (a) the execution and delivery of appropriate agreements or other documents of restructuring, refinancing, exit financing, or reorganization containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of this Plan; (c) the filing of appropriate certificates of merger, consolidation or dissolution with the appropriate

governmental authorities under applicable law; and (d) all other actions that the Debtor or the Reorganized Debtor, as applicable, determines are necessary or appropriate.

The Confirmation Order shall, and shall be deemed to, authorize under all applicable Sections of the Bankruptcy Code, among other things, all actions as may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate, this Plan.

**6.2** *Series 2023 Bond Documents*. As part and parcel of the Restructuring Transaction, the Debtor or Reorganized Debtor shall be authorized to enter into the Series 2023 Bond Documents on the Effective Date. On the Effective Date, and following the consummation of the Restructuring Transaction, the Series 2023 Bond Documents shall constitute legal, valid, binding, and authorized obligations of the Issuer, the Reorganized Debtor, Epworth Villa, and the Series 2023 Bond Trustee, as applicable, enforceable in accordance with their terms. The financial accommodations to be extended under the Series 2023 Bond Documents are being extended and shall be deemed to have been extended in good faith and for legitimate business purposes and are reasonable and shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Series 2023 Bond Documents or that otherwise secure the Series 2023 Bonds (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on and security interests in the collateral granted thereunder in accordance with the terms of the Series 2023 Bond Documents, (c) shall be deemed automatically perfected on the Effective Date (without any further action being required by the Reorganized Debtor, the Series 2023 Bond Trustee, or any of Holders of Series 2023 Bonds), having the priority set forth in the Series 2023 Bond Documents and subject only to such Liens and security interests as may be permitted under the Series 2023 Bond Documents, and (d) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. Notwithstanding the foregoing, the Reorganized Debtor and the entities granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of this Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

On the Effective Date, the Reorganized Debtor shall cause the Series 2023 Issuer to issue the Series 2023 Bonds, the primary economic terms of which are described below.[1]

### *Series 2023A Bonds*.

| | |
|---|---|
| **Principal:** | $6,000,000 on the terms and conditions set forth in the Series 2023 Bond Documents. |
| **Rate of Interest and Payment Terms**: | The Series 2023A Bonds (Tax Exempt) will bear interest at a fixed rate equal to the 7-year MMD rate (set at close of business 3 business days prior to closing) plus 400 basis points with a floor of 7.00% per annum. |
| | Payments on the Series 2023A Bonds shall be: (i) interest only for the first two (2) years due and payable semi-annually; and thereafter (ii) principal will be based on a fifteen (15) year amortization period and structured to level debt service. |
| | Subject to optional redemption prior to maturity commencing on the 4th year after the closing date at a redemption price of 101% (including at maturity). |
| | Redeemable from 70 Day Excess Cash (defined below). |
| **Final Maturity Date:** | Seven (7) years from the date of issuance. |
| **Collateral:** | The Series 2023A Bonds will be secured by a first-priority lien on all assets of the Reorganized Debtor. as to collateral, payment, cash flow and enforcement of rights and remedies to the Series 2023B and Series 2023C Bonds, subject to the terms of the Plan Term Sheet |

### *Series 2023B Bonds*.

| | |
|---|---|
| **Principal:** | $66,700,000, on the terms and conditions set forth in the Series 2023 Bond Documents. |
| **Rate of Interest and Payment Terms**: | The Series 2023B Bonds (Tax Exempt) will bear interest at a fixed rate of 5.875% per annum. |

---

[1] The information set forth in the accompanying chart is solely for summary purposes. To the extent there is any discrepancy between the information set forth in the chart and the Series 2023 Bond Documents, the Series 2023 Bond Documents, copies of which will be included in the Plan Supplement, control.

Payments on the Series 2023B Bonds shall be: (i) interest only for the first 7 years due and payable semi-annually; and thereafter (ii) principal will be amortized over a seventeen (17) year period and structured to level debt service.

Subject to optional redemption prior to maturity commencing on the 6th year after the Effective Date at a redemption price of 104% in year 6, 103% in year 7, 102% in year 8, 101% in year 9 and at a price equal to par in year 10.

**Final Maturity Date**:                 Twenty-four (24) years from issuance.

**Collateral**:                 The Series 2023B Bonds will be secured by a lien on all assets of the Reorganized Debtor, junior only to the liens securing the Series 2023A Bonds, but senior to the liens securing the Series 2023C Bonds.

### *Series 2023C Bonds*.

**Principal:**                 $13,724,671, on the terms and conditions set forth in the Series 2023 Bond Documents.

**Rate of Interest and Payment Terms:**

The Series 2023C Bonds will bear interest at a fixed rate of 2% per annum. Payments on the Series 2023C Bonds shall be made only from 90 Day Excess Cash (defined below) in the manner stated in the Distribution Waterfall (defined and described below).

Interest payable to the extent of Excess Cash with any additional Excess Cash otherwise available to pay interest on the Series 2023C Bonds to be used as partial redemption of the principal amount of the Series 2023C Bonds outstanding.

Redeemable from Excess Cash (defined below).

The Series 2023C Bonds are subject to redemption prior to maturity in the event the Series 2023B Bonds are optionally redeemed prior to maturity. The Series 2023C Bonds will be redeemed pro rata based upon the outstanding principal amounts of the Series 2023B Bonds and the Series 2023C Bonds at the time of redemption.

**Final Maturity Date:**                 Twenty-four (24) years from issuance. The indebtedness of the Series 2023C Bonds shall be cancelled at maturity to the extent it has not been satisfied through proper application of the 90 Day Excess Cash.

**Collateral:**                    The Series 2023C Bonds will be secured by a lien on all assets of the Reorganized Debtor, junior to those to be held in connection with Series 2023A Bonds and Series 2023B Bonds.

**Distribution Waterfall under the Series 2023 Bond Documents.**[2]

(a)    The Reorganized Debtor shall deposit, or cause to be deposited to the Revenue Fund, upon receipt thereof, all Gross in the form of cash, checks, or negotiable instruments.

(b)    On the first (1st) Business Day of each calendar month, amounts in the Revenue Fund shall be transferred or deposited, as applicable, so long as no Event of Default has occurred and is continuing by the Bond Trustee in the following order of priority (the "*Distribution Waterfall*"):

(i)    First, to the Reorganized Debtor for deposit to the Operating Fund the amounts necessary for the Reorganized Debtor to pay budgeted operating expenses for the upcoming month equal to one hundred fifty percent (150%) of the projected budgeted operating expenses for the upcoming month, including without limitation for costs of operating, managing, maintaining and improving the Facility, budgeted capital expenses (after funds in the Project Fund have been fully disbursed), including costs for the Project, and all Additional Payments due from the Reorganized Debtor to any Person pursuant to Section 4.3 of the Series 2023 Loan Agreement, including specifically all fees and expenses of the Authority, the Bond Trustee and the Bondholder Representative.  The amount to be deposited from the Revenue Fund to the Operating Fund in any given month shall take into account any unapplied amount deposited in the Operating Fund from the Revenue Fund for such purpose in a prior month, but excluding from the calculation of the amount to be deposited in the Operating Fund from the Revenue Fund the amount of any Excess Cash released to the Reorganized Debtor pursuant to Section 407(b)(ix)(B) of the Series 2023 Loan Agreement that remains in the Operating Fund, as certified by the Reorganized Debtor (in a certificate setting forth in reasonable detail the projected application of the amount so certified) delivered to the Bond Trustee no later than seven (7) Business Days prior to the first (1st) Business Day of such month;

(ii)    Second, to the Series 2023A Interest Account of the Debt Service Fund, an amount equal to one-sixth (1/6th) of the interest due on the next Interest Payment Date for the Series 2023A Bonds;

(iii)    Third, commencing December 1,  2025 until the Series 2023A Bonds are satisfied in full, to the Series 2023A Principal Account of the Debt Service Fund, an amount equal to one-twelfth (1/12th) of the principal due on the next principal payment date for the Series 2023A Bonds;

---

[2] Terms utilized in this description of the Distribution Waterfall, but not otherwise defined herein, shall have the meaning ascribed to them in the Series 2023 Bond Indenture, which is included in the Plan Supplement and attached to the Disclosure Statement.

(iv)     Fourth, to the Series 2023B Interest Account of the Debt Service Fund, an amount equal to one-sixth $(1/6^{th})$ of the interest due on the next Interest Payment Date for the Series 2023B Bonds;

(v)     Fifth, commencing December 1, 2029 until the Series 2023B Bonds are satisfied in full, to the Series 2023B Principal Account of the Debt Service Fund, an amount equal to one-twelfth $(1/12^{th})$ of the principal due on the next principal payment date for the Series 2023B Bonds;

(vi)     Sixth, while the Series 2023A Bonds are Outstanding, all remaining funds after application of paragraphs First through and including Fifth shall be distributed to the Operating Reserve Fund until the balance therein equals seventy (70) Days Cash on Hand;

(vii)     Seventh, to the Series 2023A Principal Account of the Debt Service Fund until $2,000,000 in principal amount of Series 2023A Bonds has been redeemed, and then as follows: (1) fifty-five percent (55%) to the Series 2023A Principal Account of the Debt Service Fund, (2) twenty five percent (25%) to the Reorganized Debtor as unrestricted funds to be deposited in the Ancillary Operating Fund, and (3) twenty percent (20%) to the Series 2023B Account of the Debt Service Reserve Fund until the balance in such account equals the Debt Service Reserve Fund Requirement; provided that (a) if the Series 2023A Bonds are no longer Outstanding before the Series 2023B Account of the Debt Service Reserve Fund is fully funded, the fifty-five percent (55%) to be deposited to the Series 2023A Principal Account of the Debt Service Fund shall instead be deposited in the Series 2023B Account of the Debt Service Reserve Fund until the balance in such account equals the Debt Service Reserve Fund Requirement, and (b) if the deficiency in the Series 2023B Account of the Debt Service Reserve Fund is replenished before the Series 2023A Bonds are paid in full, the twenty percent (20%) otherwise attributable to the Series 2023B Account of the Debt Service Reserve Fund shall be distributed to the Reorganized Debtor as unrestricted funds to be deposited in the Ancillary Operating Fund;

(viii)     Eighth, after the Series 2023A Bonds are paid in full, to the Operating Reserve Fund until the amount on deposit therein equals ninety (90) Days Cash on Hand; and

(ix)     Ninth, any amount remaining after application of paragraphs First to Eighth above (disregarding any such paragraph pursuant to the provisions of which application has not yet commenced), (such remaining amounts referred to as "Excess Cash"), shall be distributed as follows:

(A)     fifty percent (50%) of the Excess Cash to the Series 2023C Account of the Debt Service Fund to pay interest due on the next Interest Payment Date and then to pay principal of the Series 2023C Bonds pursuant

to Section 301(d) hereof until the Series 2023C Bonds are fully redeemed; and

(B)     fifty percent (50%) of the Excess Cash to the Reorganized Debtor as unrestricted funds to be deposited in the Ancillary Operating Fund.

**Additional Security for Series 2023 Bonds**.

The Series 2023 Bond Documents establish certain "Debt Service Reserve Funds" with the Series 2023 Bond Trustee, subject to its lien under the Series 2023 Bond Documents, to secure payment of the Series 2023A Bonds, and the Series 2023B Bonds, respectively.  The Series 2023A Debt Service Reserve Fund shall be funded from the proceeds of the Series 2023A Bonds.  On the Effective Date, the Series 2023B Debt Service Reserve Fund requirement shall equal the Maximum Annual Debt Service (as defined below). The balance in the Existing Bond reserve account shall be deposited into the Series 2023B Debt Service Reserve Fund on the Effective Date with any shortfall from the Series 2023B Debt Service Reserve Fund requirement being supplemented pursuant to the Distribution Waterfall.

"Maximum Annual Debt Service" means, with respect to the Series 2023B Bonds, the maximum annual debt service payable during the term of the Series 2023B Bonds excluding the year 2047.

**6.3**     ***No Further Corporate Action***.   The issuance of the Series 2023 Bonds for distribution under this Plan is authorized without the need for further corporate action, and all of the Series 2023 Bonds issued or issuable under this Plan shall be deemed duly authorized and validly issued under this Plan.  The Reorganized Debtor shall cause to be delivered customary legal opinions and other documents in connection with the issuance of the Series 2023 Bonds, in form and substance acceptable to the Series 2023 Bond Trustee and the DIP Bondholder Representative, including, without limitation, (i) the Opinion of Bond Counsel described in the Series 2023 Bond Documents, and (ii) a lender's title policy with respect to the real property securing the Reorganized Debtor, Epworth Villa's obligations under the Series 2023 Bond Documents, and the first mortgage position of the Series 2023 Bond Trustee, subject to such exceptions as are reasonably acceptable to the Series 2023 Bond Trustee and the DIP Bondholder Representative.

**6.4**     ***Continued Corporate Existence***.  Except as otherwise provided in this Plan, the Debtor shall continue to exist as of the Effective Date as a separate corporate entity (the Reorganized Debtor), with all the powers of a Reorganized Debtor under the applicable law in the jurisdiction where the Debtor is incorporated or formed and under the certificates of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificates of incorporation and bylaws (or other formation documents) are amended by this Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be under this Plan and require no further action or approval.

**6.5** *Vesting of Assets in the Reorganized Debtor*.  Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, including the Liens and security interests granted under the Existing Bond Documents to the extent such Liens and security interests continue to secure the obligations related to the Series 2023 Bond Documents, on the Effective Date, all property in the Estate, all Causes of Action, and any property acquired by the Debtor under this Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its businesses and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**6.6** *Cancellation of Agreements, Security Interests, and Other Interests*.  On the Effective Date, except to the extent otherwise specifically provided in this Plan, all notes, instruments, certificates, and other documents evidencing the Existing Bonds, shall be cancelled and the obligations of the Debtor or the Reorganized Debtor, Epworth Villa, thereunder or in any way related thereto shall be discharged and the agents and the Existing Bond Trustee thereunder shall be automatically and fully discharged from all duties and obligations thereunder.  Except to the extent certain security interests and Liens continue in existence pursuant to the Series 2023 Bond Documents, all existing security interests and/or Liens and/or any other Secured Claims shall also be automatically released, discharged, terminated, and of no further force and effect as of the Effective Date.  Notwithstanding the foregoing, following confirmation of this Plan or the occurrence of the Effective Date, to the extent that the Existing Bond Documents do not otherwise remain in effect pursuant to the Series 2023 Bond Documents, any credit document or agreement that governs the rights of any Holder of an Existing Bond Claim shall continue in effect for purposes of (1) allowing Holders of such Allowed Claims to receive distributions under this Plan; (2) allowing and preserving the rights of the agents or representative of Holders of such Claims to make distributions on account of such Allowed Claims, as provided in this Plan; (3) preserving all exculpations in favor of the Existing Bond Trustee; (4) allowing the Existing Bond Trustee to enforce any rights and obligations owed to it under this Plan or the Confirmation Order, including the ability of the Existing Bond Trustee to be compensated for fees and reimbursed for expenses, including expenses of its professionals, to assert its charging lien, to enforce its indemnity and other rights and protections with respect to and pursuant to the Existing Bond Documents; and (5) permitting the Existing Bond Trustee to appear and be heard in the Chapter 11 Case, or in any proceeding in the Court or any other court.

**6.7** *Entrance Fee Escrow.* As of the Petition Date, the Entrance Fee Escrow held approximately $14.8 million. On the Effective Date, funds in the Entrance Fee Escrow shall first be used to pay any refund obligations to former Residents in accordance with the terms of the applicable Residency Agreements and the Escrow Agreement; second, to satisfy the DIP Claim; third, to pay Allowed Administrative Expense Claims; and fourth, to the Revenue Fund (as defined in the Series 2023 Bond Indenture).

**6.8** *Exemption from Registration Requirements; Trading of Securities*. The offering, issuance, and distribution of Series 2023 Bonds issued under this Plan shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act under Section 3(a)(4) of the Securities Act of 1933, as amended and under Section 1145(a)(1) of the Bankruptcy Code.  Any and all Series 2023 Bonds issued under this Plan will be freely tradable under the

Securities Act by the recipients thereof, subject to the requirements of the Series 2023 Bond Indenture.

6.9     ***Exemption from Certain Transfer Taxes and Recording Fees***.  To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any entity under, in contemplation of, or in connection with this Plan or under:  (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.10     ***Board and Officers of the Reorganized Debtor***.  As of the Effective Date, the then-current members of the Board of Directors and officers of the Debtor shall remain in their capacities as directors and officers of the Reorganized Debtor unless otherwise disclosed in the Plan Supplement or prior to the commencement of the Confirmation Hearing, in each case subject to the ordinary rights and powers of the Board of Directors to remove or replace the officers in accordance with the Reorganized Debtor's organizational documents and any applicable employment agreements that are assumed pursuant to this Plan.  From and after the Effective Date, each officer of the Reorganized Debtor shall serve pursuant to the terms of the Reorganized Debtor's certificates of incorporation and bylaws or other formation and constituent documents, and applicable laws of the Reorganized Debtor's jurisdiction of formation.

6.11     ***Directors and Officers Insurance Policies***.  Notwithstanding anything in this Plan to the contrary, the Reorganized Debtor shall be deemed to have assumed all of the Debtor's Directors and Officers ("D&O") liability insurance policies under Section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtor's foregoing assumption of the unexpired D&O liability insurance policies.  Notwithstanding anything to the contrary contained in this Plan, Confirmation of this Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O liability insurance policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under this Plan as to which no Proof of Claim need be Filed.

6.12     ***Other Insurance Policies***.  On the Effective Date, the Debtor's insurance policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor under Section 365 of the Bankruptcy Code and Section 7.1 of this Plan.  Nothing in this Plan shall affect,

impair, or prejudice the rights of the insurance carriers, the insureds, or the Reorganized Debtor under the insurance policies in any manner, and such insurance carriers, the insureds, and the Reorganized Debtor shall retain all rights and defenses under such insurance policies. The Insurance Policies shall apply to and be enforceable by and against the insureds and the Reorganized Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date. Following the Effective Date, the Debtor's Insurance Policies shall comply with all applicable covenants set forth in the Series 2023 Bond Documents.

**6.13    *Preservation of Rights of Action*.**   In accordance with Section 1123(b) of the Bankruptcy Code but subject to the releases set forth in Section 11 of this Plan, including but not limited to the release of all Causes of Action against the Existing Bond Trustee, the Consenting Holders, the DIP Lender, and the DIP Bondholder Representative, all Causes of Action that the Debtor may hold against any entity shall vest in the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine, initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. **Subject to the releases set forth in Section 11 of this Plan, no entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in this Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of the confirmation of this Plan or the occurrence of the Effective Date.**

**6.14    *Corporate Action*.**   Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other entity, including:  (1) assumption of Executory Contracts; (2) selection of the directors, managers, and officers for the Reorganized Debtor; (3) the execution of and entry into the Series 2023 Bond Documents; (4) the issuance and distribution of the Series 2023 Bonds as provided in this Plan; and (5) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions contemplated by this Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in this Plan involving the company structure of the Reorganized Debtor and any company action required by the Debtor or the Reorganized Debtor, as applicable, in connection therewith shall be deemed to have occurred on and shall be in effect as of the Effective Date without any requirement of further action by the security holders, directors, managers, authorized persons, or officers of the Debtor or the Reorganized Debtor, as applicable.

On or prior to the Effective Date, the appropriate officers, directors, managers, or authorized persons of the Debtor or the Reorganized Debtor, as applicable (including any Board Chair, Board Vice-Chair, president, vice-president, chief executive officer, treasurer, general counsel, or chief financial officer thereof), shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, certificates of formation, bylaws, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as applicable, including (1) the Series 2023 Bond Documents, (2) the Series 2023 Bonds and (3) any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**6.15** ***Effectuating Documents; Further Transactions***. Prior to, on, and after the Effective Date, the Debtor and the Reorganized Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of this Plan, the Series 2023 Bond Documents, and any securities issued under this Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required under this Plan. All counterparties to any documents described in this paragraph are authorized to and may execute any such documents as may be required or provided by such documents without further order of the Court.

## SECTION 7  - ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS

**7.1** ***Assumption and Rejection of Executory Contracts.*** Except as otherwise provided in this Plan or in a motion filed by the Debtor before the Effective Date, each of the Executory Contracts of the Debtor shall be deemed assumed as of the Effective Date, without the need for any further notice to or action, order, or approval of the Court, pursuant to Section 365 of the Bankruptcy Code. Among other Executory Contracts, all Residency Agreements of *existing* and *prospective* Residents as of the Effective Date shall be assumed. The Confirmation Order may constitute an order of the Court approving the assumption of each of the Executory Contracts, all pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.

**7.2** ***Inclusiveness***. Except as otherwise provided in this Plan or agreed to by the Debtor and the applicable counterparty, each Executory Contract shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract.

**7.3** ***Cure of Defaults***. The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter, with the amount and timing of payment of any such Cure dictated by the Debtor's ordinary course of business.

**7.4      Full Release and Satisfaction**.  Assumption of any Executory Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption.  The foregoing provision shall not apply to and shall not impair the rights of the Holders of the Series 2023 Bonds.

**7.5      Reservation of Rights**.  Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or the Reorganized Debtor that any given contract is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder.

**7.6      Nonoccurrence of Effective Date**.  In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases under Section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

## SECTION 8   - PROVISIONS REGARDING DISTRIBUTIONS.

This Section 8 is not applicable to the distributions to be made to the Holders of the Existing Bonds, which shall receive their respective Pro Rata interest in the Series 2023 Bonds as provided herein.

**8.1      Timing and Calculation of Amounts to Be Distributed.**  Unless otherwise provided in this Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), or as soon as reasonably practicable thereafter, each Holder of an Allowed Claim or Interest will receive the full amount of the distributions that this Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in this Plan; provided, however, that in order to receive cash distributions Holders of Allowed Claims and Interests must properly complete and return to the Disbursing Agent an executed Internal Revenue Service Form W-9 or W-8, as appropriate.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.  If and to the extent that there are disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests will be made pursuant to the provisions set forth in Section 11.  The Debtor will have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

**8.2      Distributions by Disbursing Agent**.  Unless otherwise specifically provided for in this Plan, the Disbursing Agent(s) will make all distributions required to be made under this Plan.  The Reorganized Debtor may act as Disbursing Agent or may employ or contract with other entities to assist in or make the distributions required by this Plan.

**8.3      Interest and Penalties on Claims**.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or the Series 2023 Bond Documents, required by applicable bankruptcy law, or necessary to render a Claim Unimpaired, post-petition interest and penalties will not accrue or be paid on any Claims, and no Holder of a Claim will be entitled to interest and

penalties accruing on or after the Petition Date through the date such Claim is satisfied in accordance with the terms of this Plan.

**8.4** *Manner of Cash Payment*.  Payments of Cash made pursuant to this Plan will be made, at the option and in the sole discretion of the Reorganized Debtor, by checks drawn on or wire transfers from a bank selected by the Reorganized Debtor.

**8.5** *Withholding and Reporting Requirements.*  In connection with this Plan and all distributions hereunder, the Reorganized Debtor will comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder will be subject to any such withholding and reporting requirements.  The Reorganized Debtor will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**8.6** *Setoff and Recoupment*.  The Reorganized Debtor may, pursuant to Sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws and subject to the terms of the Series 2023 Bond Documents, but will not be required to, set off and/or recoup against any Claim the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Reorganized Debtor of any claim that the Debtor or the Reorganized Debtor may assert against any Holder of an Allowed Claim, and all setoff and/or recoupment claims of the Debtor and/or the Reorganized Debtor are hereby preserved.

**8.7** *Undeliverable or Non-Negotiated Distributions*.  All undeliverable distributions under this Plan that remain unclaimed for one year after attempted distribution will indefeasibly revert to the Reorganized Debtor.  Upon such reversion, the relevant Allowed Claim will be automatically discharged and forever barred, notwithstanding any federal or state escheatment laws to the contrary.

**8.8** *Claims Paid by Third Parties*.  To the extent a Holder receives a distribution on account of a Claim and also receives payment from a party other than the Debtor or the Reorganized Debtor on account of such Claim, such Holder must, within fourteen (14) days of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of the Claim as of the date of any such distribution under this Plan.

**8.9** *Minimum Distributions*.  No distribution will be made by the Disbursing Agent on account of an Allowed Claim if the amount to be distributed to the specific Holder of an Allowed Claim has an economic value of less than $25.00.

## SECTION 9  - PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS.

This Section 9 shall not be applicable to the Existing Bond Claims, which are deemed Allowed and treated in accordance with Section 4.1 of this Plan.

{2700982;}                                    27

**9.1**     ***Allowance of Claims***.     On and after the Effective Date, the Debtor or the Reorganized Debtor will retain any and all of its rights and defenses that they had with respect to any Claim that existed immediately before the Effective Date.

**9.2**     ***Claims Administration***.     After the Effective Date, the Reorganized Debtor will have the sole authority to:   (1) File and prosecute objections to Claims, settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.

**9.3**     ***Claims Estimation***.     Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but is not required to) at any time request that the Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.   Notwithstanding any provision to the contrary in this Plan, a Claim that has been expunged from the Claims Register, but that is either subject to appeal or has not been the subject of a Final Order, will be deemed to be estimated at zero dollars, unless otherwise ordered by the Court.   In the event that the Court estimates any Claim, such estimated amount will constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.   Notwithstanding Section 502(j) of the Bankruptcy Code, in no event will any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Claim is estimated.   Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**9.4**     ***Adjustment to Claims Without Objection***.     Any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court.   Additionally, any Claim that is duplicative or redundant with another Claim against the Debtor may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Court; provided that the Debtor shall provide notice to the affected Party of such action.

**9.5** **_Time to File Objections to Claims._**  Any objections to Claims must be Filed on or before the Claims Objection Bar Date.

**9.6** **_Disallowance of Claims_**.  Any Claims held by entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, will be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that entity have been settled or the Court has entered an order with respect thereto and all sums due, if any, to the Debtor by that entity have been turned over or paid to the Debtor or the Reorganized Debtor, as applicable.  All Proofs of Claim Filed on account of an indemnification obligation will be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to this Plan, without any further notice to, or action, order, or approval of the Court; provided that the Debtor shall provide notice to the affected Party of such action.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtor, any and all Proofs of Claim Filed after the Claims Bar Date will be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of, the Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

**9.7** **_Amendments to Claims_**.  On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Court or the Reorganized Debtor, and any such new or amended Claim Filed will be deemed Disallowed in full and expunged without further notice to or action, order, or approval of the Court to the maximum extent provided by applicable law.

**9.8** **_No Distributions Pending Allowance_**.  If an objection to a Claim or Interest or portion thereof is Filed, no payment or distribution provided under this Plan may be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest, unless otherwise agreed to by the Reorganized Debtor.

**9.9** **_Distributions After Allowance_**.  To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, Distributions (if any) will be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent(s) will provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any post-Effective Date interest to be paid on account of such Claim.

# SECTION 10 - CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**10.1**   *Conditions Precedent to Confirmation*.   The Debtor shall not submit the Confirmation Order for consideration by the Court until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)   The proposed Confirmation Order shall be in form and substance reasonably satisfactory in all respects to the Debtor, the Existing Bond Trustee, the DIP Lender, the DIP Bondholder Representative and the Consenting Holders; and

(b)   This Plan, the Plan Supplement (including the Series 2023 Bond Documents), and any schedules, documents, supplements and exhibits to any of the foregoing documents shall be, in form and substance satisfactory to the Debtor, the Existing Bond Trustee, the DIP Lender, the DIP Bondholder Representative and the Consenting Holders, and on the terms contemplated by the Plan Support Agreement.

**10.2**   *Conditions Precedent to the Effective Date*.   The Effective Date shall not occur until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of this Plan:

(a)   The Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, the Existing Bond Trustee, the DIP Lender, the DIP Bondholder Representative and the Consenting Holders, and such Confirmation Order shall not be subject to any stay or an unresolved request for revocation under Section 1144 of the Bankruptcy Code;

(b)   The Plan Support Agreement shall not have been terminated, and remain in full force and effect;

(c)   The conditions to effectiveness of the Series 2023 Bond Documents shall have been satisfied or waived by the Existing Bond Trustee, the DIP Bondholder Representative and the Consenting Holders, and the Restructuring Transaction shall have closed pursuant to the terms of the Plan Support Agreement;

(d)   The Effective Date shall be no later than the date that is ninety-seven (97) days after the Petition Date or by such later date as is agreed to by the Requisite Consenting Holders (as defined in the Plan Support Agreement);

(e)   All actions, documents, certificates, and agreements necessary to implement this Plan, including, without limitation, Series 2023 Bond Documents, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws;

(f)   All amounts due and owing under the DIP Credit Agreement have been paid in full and all obligations under the DIP Credit Agreement have been fully satisfied; and

(g)   All requisite governmental authorities and third parties shall have approved or consented, to the extent required, to all actions, documents, certificates, and agreements necessary to implement this Plan.

**10.3    *Waiver of Conditions*.**  The conditions to confirmation and consummation of this Plan set forth herein may be waived in writing at any time by the Debtor, with the written consent of the Existing Bond Trustee and the DIP Bondholder Representative without notice to any other parties in interest or the Court and without a hearing.

**10.4    *Effect of Failure of Conditions*.**  If consummation of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests or any other entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders of Claims or Interests or any other entity in any respect.

## SECTION 11 - EFFECT OF CONFIRMATION

**11.1    *General*.**  Under Section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved under this Plan.  The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Court that any such compromise or settlement is in the best interests of the Debtor, its Estate, and any Holders of Claims and Interests and is fair, equitable and reasonable.  Notwithstanding anything contained in this Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, takes into account the relative priority and rights of the Claims and the Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, Section 510 of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, Section 510 of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and Interests and their respective distributions (if any) and treatments hereunder, are settled, compromised, terminated and released pursuant hereto; provided, however, that nothing contained in this Plan shall preclude any entity from exercising their rights under and consistent with the terms of this Plan and the contracts, instruments, releases, indentures, orders and other agreements or documents delivered under or in connection with this Plan, including but not limited to the Series 2023 Bond Documents.

**11.2    *Discharge of Claims and Interests*.**  To the fullest extent provided under Section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order including the rights arising under or related to the Series 2023 Bond Documents, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Causes of Action of any kind or nature whatsoever against the Debtor or any of its Assets or properties, including any interest accrued on such Claims or Interests from and after the Petition Date, and regardless of whether any property shall have been abandoned by order of the Court, distributed or retained under this Plan on account of such Claims,

Interests or Causes of Action.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate shall be deemed discharged and released under and to the fullest extent provided under Sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Such discharge shall void any judgment obtained against the Debtor or the Reorganized Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**11.3** *Injunction*.  **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, INCLUDING BUT NOT LIMITED TO ANY RIGHT ARISING UNDER OR RELATED TO THE SERIES 2023 BOND DOCUMENTS, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION WILL BE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE EFFECTIVE DATE, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO APPLICABLE LAW OR OTHERWISE; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH OF (I) – (V) ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED UNDER THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED (OR THE PROPERTY OR ESTATE OF ANY PERSON OR ENTITY SO RELEASED OR DISCHARGED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.**

**11.4** *Binding Nature of Plan*.  **ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTOR, THE REORGANIZED DEBTOR, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, ALL PERSONS AND ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS**

DESCRIBED IN THIS PLAN, EACH PERSON ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS WITH THE DEBTOR AND THE RESPECTIVE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH PERSON OR ENTITY (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.

**11.5** *Protection Against Discriminatory Treatment*. To the extent provided by Section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all entities, including governmental units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against a Reorganized Debtor, or another entity with whom a Reorganized Debtor has been associated, solely because the Debtor has been a debtor under Chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

**11.6** *Preservation of Privileges and Defenses*. No action taken by the Debtor or the Reorganized Debtor in connection with this Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtor or the Reorganized Debtor, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral).

**11.7** *Injunction Against Interference with Plan*. Upon the Court's entry of the Confirmation Order, all Holders of Claims and Interests, the Debtor, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtor's, the Reorganized Debtor's and their respective affiliates', employees', advisors', officers', directors', and agents' implementation or consummation of this Plan.

**11.8** *Release of Liens*. Except as otherwise provided in this Plan, the Confirmation Order, the Series 2023 Bond Documents (including to the extent the Series 2023 Bond Documents amend or restate the Existing Bond Documents), or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with, and conditioned upon, the applicable Distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estate shall be fully released. Except as otherwise provided in this Plan, the Confirmation Order, the Series 2023 Bond Documents, including to the extent the Series 2023 Bond Documents amend or restate the Existing Bond Documents, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's Estate shall be fully released on the Effective Date without any further action of any party, including, but not limited

to, further order of the Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

**11.9** ***Releases by the Debtor***.  Pursuant to Section 1123(b) of the Bankruptcy Code, notwithstanding anything contained in this Plan to the contrary, for good and valuable consideration, the adequacy of which is hereby confirmed, including the consummation of the transactions contemplated by this Plan, on and after the Effective Date, each Released Party shall be deemed to be conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtor, the Reorganized Debtor, and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor, the Reorganized Debtor, or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, tort, contract, or otherwise, that the Debtor, the Reorganized Debtor, or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the capital structure, management, ownership, or operation thereof), the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the Existing Bonds, the assertion or enforcement of rights and remedies against the Debtor, the Debtor's in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between the Debtor and any non-Debtor, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan Support Agreement, the Disclosure Statement, the Restructuring Transaction, this Plan (including, for the avoidance of doubt, the Plan Supplement), the DIP Order, or any other restructuring transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any entity regarding any transaction, contract, instrument, document or other agreement contemplated by this Plan or the reliance by any Released Party on this Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan Support Agreement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or the Series 2023 Bond Documents, before or during the filing of the Chapter 11 Case, the filing of the Chapter 11 Case, the pursuit of Confirmation of this Plan, the pursuit of consummation of this Plan, the administration and implementation of this Plan, including the issuance or distribution of securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order of the Court.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post Effective Date obligations of any party or entity under this Plan, the Confirmation Order, the Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement this Plan, including the Series 2023 Bond Documents, or any Claim or obligation arising under this Plan.

The foregoing release shall be effective as of the Effective Date without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any entity and the Confirmation Order will permanently enjoin the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under the foregoing release.  Notwithstanding the foregoing, nothing in Section 11 of this Plan shall or shall be deemed to prohibit the Debtor or the Reorganized Debtor from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, Causes of Action or liabilities they may have against any entity that is based upon an alleged breach of a confidentiality or non-compete obligation owed to the Debtor or the Reorganized Debtor, unless otherwise expressly provided for in this Plan.

Entry of the Confirmation Order shall constitute the Court's approval, under Bankruptcy Rule 9019, of the foregoing Debtor release, which includes, by reference, each of the related provisions and definitions contained in this Plan, and further, shall constitute the Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor's release; (iii) in the best interest of the Debtor and its Estate; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to the Debtor, the Reorganized Debtor, or the Debtor's Estate asserting any Claim or Cause of Action released pursuant to the Debtor's release.

**11.10** *Voluntary Releases by Holders of Claims and Interests.* **For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Case, the implementation of the transactions contemplated by this Plan, the distribution of funds under this Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including those the Debtor or the Estate would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim or Interest, or any other person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the conduct of the business of the Debtor, the Chapter 11 Case, the purchase, sale or exchange of any bond or other debt instrument, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the administration of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation or preparation of this Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of this Plan, other than claims or liabilities arising out of or relating**

**to any act or omission of a Released Party to the extent such act or omission is determined by a Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act.**

**11.11    *Scope of Releases.*** Each entity providing releases under this Plan, including the Releasing Parties, shall be deemed to have granted the releases set forth in this Plan notwithstanding that such entity may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and such entity expressly waives any and all rights that it may have under any statute or common law principle which would limit the effect of such releases to those claims or causes of action actually known or suspected to exist at the time of execution of such release.

**11.12    *Exculpation.*** Notwithstanding anything herein to the contrary, as of the Effective Date, the Exculpated Parties will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation. The Exculpated Parties shall neither have nor incur any liability arising on or after the filing of the Petition to any entity for any act or omission in connection with the conduct of the Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of the Chapter 11 Case; (b) the administration of Claims and Interests during the Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Disclosure Statement, this Plan, the Plan Supplement, and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for this Plan and other actions taken in furtherance of Confirmation and consummation of this Plan); (d) the offer and issuance of any securities under or in connection with this Plan; or (e) the administration and adjudication of Claims, other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act.

The Debtor believes that the Exculpated Parties have, and upon confirmation of this Plan should be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, on account of such distributions should not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

## SECTION 12 - MODIFICATION, REVOCATION OR WITHDRAWAL OF THIS PLAN

**12.1    *Modification and Amendments*.** This Plan or any exhibits hereto may be amended, modified, or supplemented by the Debtor with the consent of the Existing Bond Trustee, the DIP Lender, and the DIP Bondholder Representative in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtor or the Reorganized Debtor may institute proceedings in the Court to remedy any defect or omission or

reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

**12.2   *Effect of Confirmation on Modifications*.**  Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**12.3   *Revocation or Withdrawal of this Plan*.**  Subject to the terms of the Plan Support Agreement, the Debtor reserves the right to, consistent with its fiduciary duties, revoke or withdraw this Plan before the Effective Date.  If the Debtor revokes or withdraws this Plan, or if the Confirmation Date does not occur, then:  (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (c) nothing contained in this Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other entity; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

## SECTION 13 - RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, other than rights and obligations arising under the Series 2023 Bond Documents, including any exhibits and schedules thereto, the Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and this Plan, including, but not limited to, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or this Plan;

(c)     resolve any matters related to:  (i) the assumption or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, and cure Claims, pursuant to Section 365 of the Bankruptcy Code or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     adjudicate, decide or resolve any matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(f)     adjudicate, decide or resolve any matter involving the Reorganized Debtor;

(g)     adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(h)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

(i)     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

(j)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)     resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, any transactions or payments contemplated thereby, or any contract, instrument, release, indenture or other agreement or document relating to any of the foregoing;

(l)     adjudicate any and all disputes arising from or relating to Distributions under this Plan;

(m)     consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any Court order, including the Confirmation Order;

(n)     hear and determine all disputes involving the existence, nature or scope of the Debtor's discharges;

(o)     enforce all orders previously entered by the Court;

(p)     hear any other matter not inconsistent with the Bankruptcy Code; and

(q)     enter a final decree closing the Chapter 11 Case.

## SECTION 14 - MISCELLANEOUS PROVISIONS

**14.1     *Section 1125(e) Good Faith Compliance*.**  As of and subject to the occurrence of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

**14.2    *Substantial Consummation***.  Upon the occurrence of the Effective Date, this Plan shall be deemed to be substantially consummated within the meaning set forth in Section 1101 and pursuant to Section 1127(b) of the Bankruptcy Code.

**14.3    *Closing of the Chapter 11 Case***.  The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case but by no later than thirty (30) days after the Effective Date, file with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Case.

**14.4    *Plan Supplement***.  Any exhibits or schedules not filed with this Plan may be contained in the Plan Supplement, if any, and the Debtor hereby reserves the right to file such exhibits or schedules as a Plan Supplement.

**14.5    *Further Assurances***.  The Debtor or the Reorganized Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.  The Debtor, the Reorganized Debtor and all Holders of Claims receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**14.6    *Exhibits Incorporated***.  All exhibits to this Plan, including the Plan Supplement, are incorporated into and are part of this Plan as if fully set forth therein.

**14.7    *No Admissions***.  If the Effective Date does not occur, this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest, or (c) constitute an admission of any sort by the Debtor or other party in interest.

**14.8    *Reservation of Rights***.  Except as expressly set forth herein, this Plan shall have no force or effect unless the Court shall enter the Confirmation Order and the Effective Date has occurred.  None of this Plan, any statement or provision contained in this Plan, or any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**14.9    *Successors and Assigns***.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each entity.

**14.10    *Entire Agreement***.  On the Effective Date, this Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**14.11    *Notices***.  All notices, requests, and demands to or upon the Debtor in the Chapter 11 Case shall be in writing and, unless otherwise provided in this Plan, shall be deemed to have

been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

Central Oklahoma United Methodist Retirement Facility, Inc.,
d/b/a Epworth Villa
Attention:  Ron Kelly, President/CEO
14901 North Pennsylvania Avenue
Oklahoma City, Oklahoma  73134
Telephone:  (405) 322-5564

E-mail:  rkelly@epworthvilla.org.
with copies to:

GableGotwals
Attention:  Graydon Dean Luthey
110 North Elgin Avenue, Suite 200
Tulsa, Oklahoma  74120
Telephone:  (918) 595-4800
Email:  dluthey@gablelaw.com

All notices and requests to an entity holding any Claim or Interest in any Class shall be sent to its last known address or to the last known address of its attorney of record in the Chapter 11 Case.  Any such Holder of a Claim or Interest may designate in writing any other address for purposes of this Section, which designation will be effective upon receipt by the Debtor.

**14.12    *Severability***.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision, and such term or provision shall then be applicable as altered or interpreted; provided, however, no such alteration shall materially affect the terms of the Series 2023 Bond Documents without the consent of the Existing Bond Trustee and the DIP Bondholder Representative notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.13    *Governing Law***.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

**14.14** *Request for Confirmation*.  The Debtor requests entry of the Confirmation Order under Section 1129(a) of the Bankruptcy Code and, to the extent necessary, Section 1129(b) of the Bankruptcy Code.

Dated:  November 6, 2023

Respectfully submitted,

CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY, INC. d/b/a EPWORTH VILLA

By:  */s/ Ron Kelly*
          Name:  Ron Kelly
          Title:  President and Chief Executive Officer

*/s/ Sidney K. Swinson*
Graydon Dean Luthey, Jr., OBA No. 5568
Sidney K. Swinson, OBA No. 8804
Mark D.G. Sanders, OBA No. 22922
**Gable & Gotwals, P.C.**
110 N. Elgin Avenue, Suite 200
Tulsa, Oklahoma 74120-1495
Telephone: 918.595.4800
Facsimile: 918.595.4990
dluthey@gablelaw.com
sswinson@gablelaw.com
msanders@gablelaw.com

*Attorneys for the Debtor*