**<u>EXHIBIT 6</u>**

**(Plan Support Agreement)**

*EXECUTION VERSION*

## PLAN SUPPORT AGREEMENT

This PLAN SUPPORT AGREEMENT (this "Plan Support Agreement") is made and entered into as of September 29, 2023 (the "Effective Date") by and between Central Oklahoma United Methodist Retirement Facility, Inc., an Oklahoma not-for-profit corporation (the "Borrower") and each of the undersigned holders of Bonds (as defined herein) (the "Consenting Holders," and together with the Borrower, each a "Party" and collectively the "Parties").

## RECITALS

A.      The Oklahoma County Finance Authority (the "Issuer") issued its Oklahoma County Finance Authority Revenue Bonds, Series 1989 (Epworth Villa Project) (the "1989 Bonds") in the aggregate principal amount of $28,910,000 pursuant to the Bond Indenture dated as of April 1, 1989 (the "1989 Bond Indenture"), the proceeds of which were loaned by the Issuer to the Borrower for the purpose of constructing a retirement facility consisting of approximately 234 residential units, 60 nursing beds and 30 assisted living units licensed for residential care known as the Epworth Villa Retirement Facility (the "Facility").

B.      The Borrower refinanced the then outstanding 1989 Bonds through the issuance of its Oklahoma County Finance Authority Revenue Refunding Bonds, Series 1997 (Epworth Villa Project) (the "1997 Bonds") in the aggregate principal amount of $21,055,000 pursuant to the Bond Indenture dated as of March 15, 1997 (the "1997 Bond Indenture"), the proceeds of which were loaned by the Issuer to the Borrower pursuant to those certain First Mortgage Notes: First Mortgage Note, Series 1997A, First Mortgage Note, Series 1997B, and First Mortgage Note, Series 1997C (collectively, the "1997 Notes") issued to evidence the 1997 Bonds, as issued under and secured by that certain Mortgage and Security Agreement dated as of March 15, 1997 (the "Mortgage" and together with the Indentures and other documents evidencing or securing the 1997 Bonds, the "1997 Bond Documents") for the purpose of, among other things, to refinance the 1989 Bonds and payment for certain costs of renovations and equipment acquisitions relating to the Facility.

C.      As security for the obligations owing on the 1997 Bonds, the Borrower granted to Liberty Bank and Trust Company of Oklahoma City, N.A., as Trustee (the "1997 Bond Trustee") a security interest in substantially all of its assets as set forth in the 1997 Bond Documents including, but not limited to, all real property and substantially all personal property owned by the Borrower (as further supplemented or ratified by the Forbearance Agreement (defined below), the "Collateral").

D.      The Issuer subsequently issued its Oklahoma County Finance Authority Revenue Refunding Bonds, Series 2000 (Epworth Villa Project) and Extendable Rate Adjustable Securities℠ (EXTRAS℠) (collectively, the "2000 Bonds") in the aggregate principal amount of $15,000,000 pursuant to the Supplemental Bond Indenture dated as of December 1, 2000 (the "Supplemental Bond Indenture") by and between the Issuer and J.P. Morgan Trust Company, National Association, as successor bond trustee, the proceeds of

which were loaned by the Issuer to the Borrower for the purpose of, among other things, financing the acquisition, construction and equipping of additions to and expansions and renovations of the Facility, including, but not limited to, an assisted living, dementia center and adult care center, an education and outreach building and other additions and renovations.

E.      The Borrower subsequently refinanced a portion of the outstanding 1997 Bonds through the issuance of its Oklahoma County Finance Authority Revenue Refunding Bonds, Series 2004 (Epworth Villa Project) and Extendable Rate Adjustable Securities$^{SM}$ (EXTRAS$^{SM}$) (collectively, the "2004 Bonds") in the aggregate principal amount of $15,450,000 pursuant to the Second Supplemental Bond Indenture dated as of December 1, 2004 (the "Second Supplemental Bond Indenture") by and between the Issuer and BancFirst as the next successor bond trustee (the "Trustee"), the proceeds of which were loaned by the Issuer to the Borrower pursuant to those certain First Mortgage Notes: First Mortgage Note, Series 2004A and First Mortgage Note, Series 2004B (collectively the "2004 Notes"), as issued under and secured by that certain Supplemental Mortgage and Security Agreement, dated as of December 1, 2000 (the "Supplemental Mortgage"), as further supplemented and amended by the Second Supplemental Mortgage and Security Agreement dated as of December 1, 2004 (collectively, as supplemented and amended, the "Second Mortgage" and together with the Indentures and other documents evidencing or securing the Bonds, the "2004 Bond Documents"), the proceeds of which were loaned by the Issuer to the Borrower for the purpose of, among other things, constructing, equipping and furnishing of the Facility.

F.      Thereafter, the Issuer issued its Oklahoma County Finance Authority Revenue Refunding Bonds, Series 2005A (Epworth Villa Project) and Revenue Refunding Bonds, Series 2005B (Epworth Villa Project) Extendable Rate Adjustable Securities$^{SM}$ (EXTRAS$^{SM}$), (collectively, the "2005 Bonds") in the aggregate principal amount of $13,460,000 pursuant to the Third Supplemental Bond Indenture dated as of December 1, 2005 (the "Third Supplemental Bond Indenture"), the proceeds of which were loaned by the Issuer to the Borrower pursuant to those certain First Mortgage Notes: First Mortgage Note, Series 2005A and First Mortgage Note, Series 2005B (collectively, the "2005 Notes"), as issued under and secured by that certain Mortgage, as supplemented and amended by the Supplemental Mortgage, as further supplemented and amended by the Second Supplemental Mortgage and Security Agreement dated as of December 1, 2004, and as further supplemented and amended by the Third Supplemental Mortgage and Security Agreement (with Power of Sale) dated as of December 1, 2005 (collectively, as supplemented and amended, the "Third Supplemented and Amended Mortgage" and together with the Indentures and other documents evidencing or securing the Bonds, the "2005 Bond Documents"),the proceeds of which were loaned by the Issuer to the Borrower for the purpose of, among other things, constructing, equipping and furnishing the Facility.

G.      Thereafter, the Issuer issued its Oklahoma County Finance Authority Revenue and Refunding Bonds, Series 2012A (Epworth Villa Project), its Revenue Bonds, Series 2012B, Tax-Exempt Mandatory Paydown Securities-80$^{SM}$ (TEMPS-80$^{SM}$), and Revenue Bonds, Series 2012C, Tax-Exempt Mandatory Paydown Securities-50$^{SM}$

(TEMPS-50ˢᴹ) (collectively, the "2012 Bonds") in the aggregate principal amount of $78,635,000 pursuant to the Fourth Supplemental Bond Indenture dated as of December 1, 2012 (the "Fourth Supplemental Bond Indenture"), the proceeds of which were loaned by the Issuer to the Borrower pursuant to those certain First Mortgage Notes: First Mortgage Note, Series 2012A, First Mortgage Note, Series 2012B, and First Mortgage Note, Series 2012C (collectively, the "2012 Notes"), issued under and secured by that certain Mortgage, as supplemented and amended by the Supplemental Mortgage, as further supplemented and amended by the Second Supplemental Mortgage and Security Agreement dated as of December 1, 2004, as further supplemented and amended by the Third Supplemental Mortgage and Security Agreement (with Power of Sale) dated as of December 1, 2005, and as further supplemented and amended by the Fourth Supplemental Mortgage and Security Agreement (with Power of Sale) dated as of December 1, 2012 (collectively, as supplemented and amended, the "Fourth Supplemented and Amended Mortgage" and together with the Indentures and other documents evidencing or securing the Bonds, the "2012 Bond Documents"), the proceeds of which were loaned by the Issuer to the Borrower for the purpose of, among other things, the construction of additional structures and the renovation of existing structures for the Facility.

H.    The 2004 Bond Documents, 2005 Bond Documents and 2012 Bond Documents and any other document or agreement delivered as security for, or in respect to, the Bonds or the Borrower's obligations under any such documents are collectively referred to herein as the "Bond Documents."

I.    Events of Default and events which, with the provision of notice and the failure to cure within the applicable curative period, would constitute Events of Default, have occurred and are continuing under the Bond Documents.  At the Borrower's request and at the direction from the Consenting Holders, the Borrower and the Trustee entered into that certain Forbearance Agreement dated as of September 13, 2022 (the "Original Forbearance Agreement"), as amended by the First Amendment to Forbearance Agreement dated as of January 17, 2023 (the "First Amendment,")  the Second Amendment to Forbearance Agreement dated as of January 26, 2023 (the "Second Amendment,") the Third Amendment to Forbearance Agreement dated as of March 31, 2023 (the "Third Amendment,"), the Fourth Amendment to Forbearance Agreement dated as of June 30, 2023 (the "Fourth Amendment"), and the Fifth Amendment to Forbearance Agreement dated as of August 15, 2023 (the "Fifth Amendment,") and together with the Original Forbearance Agreement, the First Amendment, the Second Amendment, the Third Amendment, and the Forth Agreement, the "Forbearance Agreement").

J.    The Borrower desires to implement a restructuring (the "Restructuring") of its financial obligations with respect to the Bonds and its other outstanding obligations on the terms and conditions set forth in the restructuring term sheet (including all exhibits therein, the "Term Sheet") attached hereto as Exhibit 1.

K.    Each Consenting Holder holds debt arising out of, or related to, the Bonds, and the Consenting Holders hold debt, in aggregate, arising out of or related to the Bonds

3

equal to approximately thirty four percent (34%) of the principal amount of the Bonds outstanding.

L.       The Consenting Holders have agreed to the Restructuring, solely on the terms and conditions outlined in the Term Sheet.

M.       The Borrower intends to implement the Restructuring by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing a case (the "Chapter 11 Case") in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") no later than September 29, 2023 (the "Outside Petition Date").

N.       Each Party has reviewed, or has had the opportunity to review, this Plan Support Agreement and the Term Sheet with the assistance of professional legal advisors of its own choosing.

## STATEMENT OF AGREEMENT

In consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.       <u>Preliminary Statements</u>. The statements set forth in the recitals are incorporated herein and form an integrated part of this Plan Support Agreement, subject to such modifications and amendments as may be permitted pursuant to Section 11 hereof.

2.       <u>Effectiveness of Plan Support Agreement</u>. Upon the execution of this Plan Support Agreement by the Parties, this Plan Support Agreement will constitute the legally binding and enforceable agreement of the Parties, effective as of the Effective Date.

3.       <u>Agreements of the Borrower</u>. Consistent with the Borrower's business judgment and the exercise of its fiduciary duties, the following are material covenants and conditions to the agreements contained herein:

(a)       The Borrower shall provide drafts of the following documents (collectively, the "Bankruptcy Documents") in form and substance reasonably satisfactory to the Consenting Holders and the Trustee no later than five (5) business days prior to the Outside Petition Date:

i)       Chapter 11 Petition with required documents, including: (i) officer's certificate, (ii) board resolutions, (iii) top 20 creditors list, (iv) Rule 1007(a)(1) corporate ownership statement, (v) declaration of electronic filing, and (vi) declaration regarding attorney compensation;

ii)       Declaration in Support of First-Day Pleadings;

4

iii)    Motion for Entry of Interim and Final Orders (1) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral and (2) Granting Liens and Superpriority Administrative Expense Claims, (3) Granting Adequate Protection (the "DIP Motion"), and the proposed interim order (the "Interim DIP Order," and collectively with the final order, the "DIP Orders"), which orders shall be drafted by Hamlin Capital Management, LLC ("HCM") and the Trustee;

iv)    Plan of Reorganization (the "Plan");

v)    Disclosure Statement with respect to the Plan of Reorganization (the "Disclosure Statement");

vi)    Motion for Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Existing Bank Accounts, and Deposit Practices and Related Business Forms;

vii)    Application for Approval of Payment of Prepetition Payroll;

viii)    Application for Determination of Adequate Assurance of Payment to Utility Providers;

ix)    Debtor's Motion for Entry of an Order Authorizing Debtor to (I) Escrow Post-Petition Entrance Fees and (II) Refund Certain Resident Entrance Fees and proposed Order;

x)    Debtor's Motion for Entry of an Order Authorizing the Implementation of Procedures to Maintain and Protect Confidential Patient Information and proposed Order;

xi)    Motion for Entry of an Order Authorizing the Debtor to Enter into the Plan Support Agreement and proposed Order; and

xii)    Request for Consideration of Certain "First Day" Matters.

(b)    The Borrower shall take all commercially reasonable steps to obtain approvals for the Restructuring as expeditiously as is reasonably practicable under applicable law, including the solicitation of requisite acceptances by means of the Disclosure Statement.

(c)     The Borrower shall take all commercially reasonable steps to obtain any and all requisite regulatory or third party approvals necessary to consummate the Restructuring as is reasonably practicable.

(d)     The Borrower will take all commercially reasonable efforts to file the Chapter 11 Case, contemporaneously with the Bankruptcy Documents, no later than the Outside Petition Date (the date on which the Chapter 11 Case and Bankruptcy Documents are actually filed shall be referred to herein as the "Petition Date").

(e)     The Borrower shall take all reasonably necessary steps in seeking to obtain from the Bankruptcy Court an order confirming the Plan reasonably acceptable in form and substance to the Consenting Holders and the Trustee (the "Confirmation Order") on or before the date that is eighty-two (82) days after the Petition Date.

(f)     The Plan effective date occurs on or before the date that is ninety-seven (97) days after the Petition Date (the "Plan Effective Date").

(g)     The Borrower shall take no action inconsistent with the Restructuring, the transactions contemplated thereby, or the expeditious confirmation and consummation of such transactions.

(h)     Subject to the exercise of its fiduciary duties, the Borrower shall not file a petition under the Bankruptcy Code or seek any similar relief without providing the Trustee and the Consenting Holders at least five (5) business days' written notice thereof.

(i)     In the event the Borrower proposes a plan of reorganization that does not comply with this Plan Support Agreement or that constitutes a Support Agreement Termination Event (as defined below), the Borrower will not assert that the Consenting Holders or the Trustee have expressly or impliedly supported, endorsed, or otherwise agreed to any financial information, including any projections or liquidation analysis, included in the Bankruptcy Documents or have otherwise agreed to or acknowledged any facts set forth in the Bankruptcy Documents.

(j)     The Borrower will not:

    i)     incur any further indebtedness with priority over the Bonds, with the exception of that provided by clients of HCM in accordance with the Term Sheet;

    ii)     transfer any assets other than in the ordinary course of its business other than miscellaneous assets not necessary for the operations of the Borrower; and

6

iii)    take any action that would result in entry of an order terminating, whether in whole or in part, the Borrower's exclusive right to file a Chapter 11 plan pursuant to Section 1121 of the Bankruptcy Code.

4.    <u>Agreements of Consenting Holders</u>.

(a)    <u>Ownership</u>. Each Consenting Holder represents and warrants that, as of the date hereof, such Consenting Holder either (i) is the sole legal or beneficial owner of a principal amount of the Bonds outstanding as set forth on **Schedule 1** hereto, and all related claims, rights, powers, and causes of action arising out of or in connection with or otherwise relating to such Bonds or the Bond Documents (collectively, the "<u>Claims</u>"), or (ii) has the power and authority to bind the legal and beneficial owner(s) of such Bonds and Claims to the terms of this Plan Support Agreement and, in either case, such Consenting Holder has full power and authority to vote on and consent to such matters concerning such Bonds outstanding and such Claims and to exchange, assign and transfer such Bonds and Claims.

(b)    <u>Restrictions on Transfers</u>. Until this Plan Support Agreement has been terminated in accordance with Section 8, each Consenting Holder shall not voluntarily sell, transfer, or assign any of its Bonds or Claims or any option thereon or any right or interest (voting or otherwise) therein unless the transferee thereof (i) has already executed this Plan Support Agreement or (ii) agrees in writing by executing the form of Joinder attached hereto as **Exhibit 2** to be bound, for the benefit of the Parties, by all of the terms of this Plan Support Agreement. Subject to applicable securities and bankruptcy law, this Plan Support Agreement shall in no way be construed to preclude any Consenting Holder or any of its respective subsidiaries or affiliates from acquiring additional Bonds; *provided*, *however*, that any such additional Bonds acquired by such Consenting Holder or any subsidiary or affiliate thereof shall automatically be deemed to be subject to the terms of this Plan Support Agreement.

(c)    <u>Voting on the Plan</u>. Subject to the terms and conditions of this Plan Support Agreement, and so long as this Plan Support Agreement has not been terminated, and further provided that the Disclosure Statement approved by the Bankruptcy Court contains information substantially similar to that set forth in the Disclosure Statement filed as part of the Bankruptcy Documents, each Consenting Holder will vote all claims that it holds or as to which it has voting authority with respect to the Bonds outstanding, the Claims, and all other claims, rights, or interests that exist against the Borrower to accept the Plan, provided it is in a form substantially similar to that set forth in the Plan filed as part of the Bankruptcy Documents.

(d)    <u>Support</u>. So long as this Plan Support Agreement has not been terminated, absent the consent of the Borrower, each Consenting Holder will not:

7

      i)     support or encourage, directly or indirectly, any financial restructuring or sale of assets concerning the Borrower or its assets, other than the Restructuring;

      ii)    take any action inconsistent with the Term Sheet, the transactions contemplated hereby or thereby, or the expeditious confirmation and consummation of such transactions;

      iii)   vote against the Plan or otherwise agree, consent, or provide any support, to any other Chapter 11 plan or other restructuring or sale or liquidation of assets concerning the Borrower or its assets, other than the Restructuring;

      iv)   object to or otherwise commence any proceeding to oppose or alter the Plan or any of the terms of the Restructuring (or any other document filed in furtherance of, and that is consistent with the Restructuring); or

      v)    direct the Trustee to take any action or otherwise act in a manner contrary to the terms of this Plan Support Agreement.

(e)    <u>Adequate Information; Compliance with Section 1125(g) of the Bankruptcy Code</u>.  Each Consenting Holder has obtained "adequate information" (within the meaning of that phrase for purposes of Section 1125(a)(1) of the Bankruptcy Code) regarding the Restructuring and the Borrower has provided all material, relevant information that the Consenting Holder has requested in advance of executing this Plan Support Agreement. Additionally, for purposes of this Plan Support Agreement, the solicitation of its support of the Plan in accordance with the terms and conditions hereof complies with applicable law and that each Consenting Holder was solicited in a manner complying with applicable law.

(f)    <u>Appearing in the Bankruptcy Court</u>.  Notwithstanding any provision in this Plan Support Agreement to the contrary, nothing in this Plan Support Agreement shall be construed to prohibit any Party from appearing as a party-in-interest in any matter to be adjudicated in the Bankruptcy Court so long as such appearance and the positions advocated in connection therewith are not inconsistent with this Plan Support Agreement and the Restructuring and are not for the purpose of hindering, delaying, or preventing the consummation of the Restructuring.

(g)    <u>Direct the Trustee</u>.  To the extent necessary, each Consenting Holder will direct the Trustee to take actions consistent with this Plan Support Agreement.

5.    <u>Representations and Warranties of the Borrower</u>. The Borrower represents and warrants to the Consenting Holders that the following statements are true, correct, and complete as of the date hereof:

(a)    it has all requisite corporate or similar authority to enter into this Plan Support Agreement and, subject to any necessary Bankruptcy Court approval, carry out the transactions contemplated hereby and perform its obligations contemplated hereunder, and the execution and delivery of this Plan Support Agreement and the performance of the Borrower's obligations hereunder have been duly authorized by all necessary corporate, limited liability, partnership, or other similar action on its part;

(b)    the execution, delivery, and, subject to any necessary Bankruptcy Court approval, performance by such Borrower of this Plan Support Agreement does not and shall not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries;

(c)    the execution, delivery, and performance by such Borrower of this Plan Support Agreement does not and shall not require any registration or filing with, consent or approval of, notice to, or other action to, with or by, any federal, state, or governmental authority or regulatory body;

(d)    to the best of its knowledge, after reasonable diligence, the information provided in connection with the Restructuring and this Plan Support Agreement did not and does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; and

(e)    this Plan Support Agreement is, and after the Petition Date but subject to the assumption of this Plan Support Agreement pursuant to Section 365 of the Bankruptcy Code shall be, a legally valid and binding obligation of the Borrower, enforceable in accordance with its terms.

6.    <u>Representations and Warranties of the Consenting Holders</u>. Each Consenting Holder represents and warrants to the Borrower that the following statements are true, correct, and complete as of the date hereof:

(a)    it has all requisite corporate, partnership, limited liability company, or similar authority to enter into this Plan Support Agreement and perform its obligations contemplated hereunder, and the execution and delivery of this Plan Support Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, limited liability, partnership, or other similar action on its part;

(b)      the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not violate any provision of law, rule, or regulation applicable to it or any of its subsidiaries or its charter or bylaws (or other similar governing documents) or those of any of its subsidiaries;

(c)      the execution, delivery, and performance by the undersigned of and under this Plan Support Agreement does not and shall not require any registration or filing with, consent or approval of, notice to, or other action to, with or by, any federal, state or governmental authority or regulatory body; and

(d)      this Plan Support Agreement is the legally valid and binding obligation of such Consenting Holder, enforceable in accordance with its terms.

7.      <u>Alternative Transactions</u>.  From and after execution of this Plan Support Agreement until it is terminated pursuant to Section 8 hereof, neither the Borrower nor any of its officers, directors, employees, agents, representatives, or affiliates (including any investment banker or financial advisor retained by the Borrower) shall, directly or indirectly, encourage, solicit, or initiate any inquiry or proposal from, or encourage, solicit, or initiate any negotiations with, or solicit or initiate any discussions with any person or entity (other than the Consenting Holders and the Trustee or an affiliate, associate, representative or agent of such parties) concerning any potential sale of the Borrower or restructuring of the Borrower or a transaction that is similar to, in conflict with or in substitution of the Restructuring pursuant to the terms hereof (each, an "<u>Alternative Transaction</u>"), or agree to endorse or take any other action to facilitate any Alternative Transaction, unless the Borrower has obtained the prior written consent of the Consenting Holders holding all rights related to or otherwise having voting authority with respect to 75% of the principal amount of the Bonds held collectively by the Consenting Holders who are signatory hereto (the "<u>Requisite Consenting Holders</u>").

8.      <u>Termination of Support Agreement</u>. Upon the occurrence of any Support Agreement Termination Event, this Plan Support Agreement shall be deemed terminated upon written notice from the non-breaching Party to the breaching Party.  In the event of any such termination, all Parties shall be immediately relieved of any obligations hereunder.  If the Chapter 11 Case has been filed prior to such occurrence, such notice may be provided as part of a motion for relief from the automatic stay; <u>*provided*</u> that nothing herein shall be deemed to require a motion for relief from the automatic stay to effect such termination.  Notwithstanding the above or anything else in this Plan Support Agreement to the contrary, upon termination of this Plan Support Agreement, any Consenting Holder shall be entitled as of right to change or withdraw its vote in favor of the Plan and be relieved from all obligations of a Consenting Holder under this Plan Support Agreement (collectively, a "<u>Withdrawal</u>"), with prior written notice thereof to the Borrower and, if applicable, compliance with Rule 3018 of the Federal Rules of Bankruptcy Procedure.  The occurrence of any one or more the following shall constitute a "<u>Support Agreement Termination Event</u>":

10

(a)    Failure by the Parties hereto to agree to the form and substance of any of the Series 2023 Bond Documents (as defined in the Term Sheet) or the Bankruptcy Documents by the date that is thirty (30) days after the Petition Date;

(b)    Any of the Bankruptcy Documents is withdrawn, materially modified or amended (except in the case of a document which is an interim order, by replacement with a final order that would otherwise meet the requirements of a Bankruptcy Document, or with the consent of the Consenting Holders and/or the Trustee);

(c)    The Borrower fails to file substantially all of the Bankruptcy Documents on the Petition Date;

(d)    The Petition Date does not occur on or before the Outside Petition Date;

(e)    The Borrower:

    i)    files or supports confirmation of, or fails to actively oppose confirmation of, a plan of reorganization that requests or would result in a withdrawal, material modification, or amendment of the Plan, or that, as to any provision of the Plan, materially adversely affects the Consenting Holders;

    ii)    files a motion, pleading, objection, lawsuit, or administrative or adversary proceeding (or takes any action in support of such a motion or pleading filed by another party) in the Bankruptcy Court or other court, or otherwise assists in any of the foregoing, that requests or would result in a withdrawal, modification, or amendment (including in the case of document which is an interim order, by replacement with a final order) of the Restructuring; or

    iii)    files a motion, complaint, application, or other request seeking to disallow, subordinate, or limit in any way the Bonds held by the Consenting Holders, the Claims, or the liens of the Consenting Holders and/or the Trustee, or seeking entry of an order by the Bankruptcy Court disallowing, subordinating, or limiting in any way the Bonds, Claims, or liens of the Consenting Holders and/or the Trustee, or asserting a claim against any Consenting Holder and/or the Trustee to avoid any transfer or obligation, or seeking any other monetary or equitable relief from or against any Consenting Holder and/or the Trustee; *provided,* that Borrower may take all reasonable necessary actions in

11

furtherance of the senior financing transaction with HCM in accordance with the Term Sheet.

(f)    Following the Petition Date, the Bankruptcy Court has:

    i)    not entered an order authorizing the assumption of this Plan Support Agreement under Section 365 of the Bankruptcy Code within thirty (30) days of the Petition Date or such later date as is agreed to in writing by the Requisite Consenting Holders;

    ii)    entered an order materially staying, reversing, vacating, materially amending or modifying the DIP Orders (other than the replacement of the interim order with the final order) without the prior written approval of the Trustee, or fails to enter the interim DIP Order on or before the date that is seven (7) days after the Petition Date, or the final DIP Order on or before the date that is forty-two (42) days after the Petition Date on such terms as set out in the DIP Orders;

    iii)    not approved the Disclosure Statement on or before the date that is forty-two (42) days after the Petition Date, or by such later date as is agreed to in writing by the Requisite Consenting Holders;

    iv)    not entered the Confirmation Order on or before the date that is eighty-two (82) days after the Petition Date, or by such later date as is agreed to in writing by the Requisite Consenting Holders;

    v)    entered an order denying confirmation of the Plan;

    vi)    entered an order pursuant to Section 1104 of the Bankruptcy Code appointing a trustee or appointing an examiner with powers beyond the duty to investigate and report (as set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code), including, without limitation, to operate and manage the Borrower's business (unless the motion resulting in such order was filed or supported by the Trustee), or the Borrower files a motion, application or other pleading consenting to or acquiescing in any such appointment;

    vii)    entered an order dismissing the Chapter 11 Case or an order pursuant to Section 1112 of the Bankruptcy Code converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

viii)   entered an order suspending the Chapter 11 Case under Section 305 of the Bankruptcy Code;

ix)   entered an order in the Chapter 11 Case, over the objection of the Trustee, approving financing pursuant to Section 364 of the Bankruptcy Code that (i) would grant an additional security interest or a lien that is equal or senior to that of the Trustee on any Collateral, or (ii) would grant to any party other than the Trustee a super priority administrative claim that is senior or equal to that granted to the Trustee under the DIP Orders, in either case, except as provided by the Term Sheet; or

x)   granted relief that is inconsistent with this Plan Support Agreement or the Plan or that would result in a withdrawal, modification, or amendment of the Restructuring that is contrary to the Term Sheet and that has a material adverse effect on the Consenting Holders; *provided* that such relief has not resulted from any action or inaction by the Consenting Holders or the Trustee.

(g)   The Plan Effective Date shall not have occurred by the date that is ninety-seven (97) days after the Petition Date or by such later date as is agreed to by the Requisite Consenting Holders;

(h)   An injunction, judgment, order, decree, ruling, or charge shall have been entered that prevents consummation of the Restructuring and that remains in effect for longer than thirty (30) days;

(i)   There is a mutual written agreement to terminate this Plan Support Agreement by the Parties;

(j)   Failure by the Borrower to comply with any obligations under this Plan Support Agreement, other than those set forth in this Section 8 (which shall be an automatic termination), and such failure is not cured within five (5) business days after written notice thereof has been given to the Borrower;

(k)   Failure by the Borrower to comply with any obligations under this Section 8; and

(l)   Failure by any of the Consenting Holders to comply with any of its obligations under this Plan Support Agreement, and such failure is not cured within five (5) business days after written notice thereof has been given by the Borrower to such Consenting Holder and the Trustee.

9.     <u>Effect of Termination</u>.  Upon termination of this Plan Support Agreement, all obligations hereunder, shall terminate and shall be of no force and effect.

10.     <u>Cooperation; Further Assurances; Acknowledgment; Definitive Documents</u>.  Each Party shall cooperate with each other and shall coordinate its activities (to the extent practicable) in respect of all commercially reasonable actions necessary to consummate the Restructuring.  The Parties further agree to execute and deliver such other instruments and to perform such commercially reasonable acts, in addition to the matters herein specified, as may be appropriate or necessary, from time to time, to effectuate the Restructuring.

11.     <u>Amendments.</u> This Plan Support Agreement may not be modified, amended or supplemented except in a writing signed by the Parties.

12.     <u>GOVERNING LAW; JURISDICTION.</u> THIS PLAN SUPPORT AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF OKLAHOMA, WITHOUT REGARD TO ANY CONFLICT OF LAWS PROVISIONS THAT WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION. BY ITS EXECUTION AND DELIVERY OF THIS PLAN SUPPORT AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY LEGAL ACTION, SUIT, OR PROCEEDING AGAINST IT WITH RESPECT TO ANY MATTER UNDER, OR ARISING OUT OF OR IN CONNECTION WITH, THIS PLAN SUPPORT AGREEMENT, OR FOR RECOGNITION OR ENFORCEMENT OF ANY JUDGMENT RENDERED IN ANY SUCH ACTION, SUIT, OR PROCEEDING, SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT IN THE STATE OF OKLAHOMA HAVING JURISDICTION, AND BY EXECUTION AND DELIVERY OF THIS PLAN SUPPORT AGREEMENT, EACH OF THE PARTIES HEREBY IRREVOCABLY ACCEPTS AND SUBMITS ITSELF TO THE EXCLUSIVE JURISDICTION OF EACH SUCH COURT, GENERALLY AND UNCONDITIONALLY, WITH RESPECT TO ANY SUCH ACTION, SUIT OR PROCEEDING; <u>PROVIDED</u>, THAT AFTER THE PETITION DATE THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY ISSUES RELATING TO THIS PLAN SUPPORT AGREEMENT.

13.     <u>Specific Performance</u>. It is understood and agreed by the Parties that the exact nature and extent of damages resulting from a breach of this Plan Support Agreement are uncertain at the time of entering into this Plan Support Agreement and that breach of this Plan Support Agreement would result in damages that would be difficult to determine with certainty.  It is understood that money damages would not be a sufficient remedy for any breach of this Plan Support Agreement, and the Parties shall each be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach.  Such remedies shall be deemed the exclusive remedies for breach of this Plan Support Agreement by any Party or its representatives.

14

14.     <u>Survival</u>. Notwithstanding any sale of the Bonds outstanding or Claims in accordance with Section 4(b) of this Plan Support Agreement, the agreements and obligations herein shall survive such sale and shall continue in full force and effect for the benefit of the Borrower and the Consenting Holders in accordance with the terms hereof, and any purchaser of such Bonds and/or Claims shall be bound by and subject to the terms of this Plan Support Agreement.

15.     <u>Headings</u>. The headings of the Sections, paragraphs, and subsections of this Plan Support Agreement are inserted for convenience only, and shall not affect the interpretation hereof.

16.     <u>Successors and Assigns; Severability; Several Obligations.</u> This Plan Support Agreement is intended to bind and inure to the benefit of each of the Parties and its respective successors, assigns, heirs, executors, administrators, and representatives. The invalidity or unenforceability at any time of any provision hereof shall not affect or diminish in any way the continuing validity and enforceability of the remaining provisions hereof.  The agreements, representations, and obligations of the Consenting Holders under this Plan Support Agreement are, in all respects, several and not joint.

17.     <u>No Third-Party Beneficiaries</u>. Unless expressly stated herein, this Plan Support Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third party beneficiary hereof.

18.     <u>Consideration</u>. No consideration shall be due or paid to the Consenting Holders and the Trustee for agreement of the Consenting Holders to support the Restructuring and to vote in favor of the Plan in accordance with the terms and conditions of this Plan Support Agreement, other than the Borrower's agreement to pursue the Restructuring and to file, pursue confirmation of, and implement the Plan in accordance with the terms and conditions of this Plan Support Agreement, which the Parties acknowledge is fair and sufficient consideration to support the Parties' respective agreements hereunder.

19.     <u>Prior Negotiations; Entire Agreement</u>. This Plan Support Agreement constitutes the entire agreement of the Parties related to the Restructuring, and supersedes all other prior negotiations with respect to the subject matter hereof, except that the Parties acknowledge that all Bond Documents and the Forbearance Agreement shall continue in full force and effect.

20.     <u>Counterparts</u>. This Plan Support Agreement and any amendments, joinders (including the joinder in the form of **Exhibit 2** hereto), consents, or supplements hereto, may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement.  Facsimile or scanned signatures on this Plan Support Agreement shall be treated as originals for all purposes.

21.     Construction.  This Plan Support Agreement shall be deemed to have been negotiated and prepared and prepared at the joint request, direction, and construction of the Parties, and at arm's length and shall be interpreted without favor to any Party.

22.     Time of the Essence.  Time shall be of the essence with respect to each and every of the various undertakings and obligations set forth in this Plan Support Agreement.

23.     Notices.  All notices, demands, requests, consents, approvals, and other communications ("Notice" or "Notices") hereunder shall be in writing and delivered by (i) courier or messenger service, (ii)  overnight mail by a reputable national overnight air courier service, or (iii) electronic mail, , addressed to the respective parties as follows:

If to Borrower:

Central Oklahoma United Methodist Retirement Facility, Inc.
c/o Epworth Villa
14901 N. Pennsylvania Ave.
Oklahoma City, OK 73134
Attn: Ron Kelly, President
Telephone:  (405) 752-1200
Email: rkelly@epworthvilla.org

Copy to:

GableGotwals
110 N. Elgin Ave., Ste 200
Tulsa, OK 74120-1495
Attn: Dean Luthey
        Sidney Swinson
Telephone: (919) 595-4800
Email: dluthey@gablelaw.com
        sswinson@gablelaw.com

If to Trustee:

BancFirst
100 N. Broadway, Suite 1400
Oklahoma City, OK 73102
Attn: Deena M. Suddath
Telephone: (405) 218-4116
Email: Deena.Suddath@BancFirst.bank

Copy to:

Mintz Levin Cohn Ferris Glovsky and Popeo, PC

16

One Financial Center
Boston, MA 02111
Attn: Daniel Bleck
      Kaitlin Walsh
Telephone: (617) 542-6000
Email: dsbleck@mintz.com
      krwalsh@mintz.com

Copy to:

Crowe & Dunlevy
324 North Robinson Avenue Suite 100
Oklahoma City, OK 73102
Attn: Joel Harmon
      John Thompson
Telephone: (405) 235-7700
Email: john.thompson@crowedunlevy.com
      Joel.harmon@crowedunlevy.com


Copy to: Consenting Bondholders

[See Schedule 1 Attached Hereto]

or to such other addresses as any Party may hereafter designate. Notice by courier or messenger service or by overnight mail shall be effective upon receipt. Notice by electronic mail shall be effective upon receipt.

24. <u>Reservation of Rights</u>. Except as expressly provided in this Plan Support Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of any Party to protect and preserve its rights, remedies, and interests, including its Claims. Nothing herein shall be deemed an admission of any kind. If the transactions contemplated herein are not consummated, or this Plan Support Agreement is terminated for any reason, each Party hereto fully reserves any and all of its rights. Except as required by the Bankruptcy Code to assume, perform, or disclose this Plan Support Agreement, pursuant to Rule 408 of the Federal Rule of Evidence, any applicable state rules of evidence, and any other applicable law, foreign or domestic, this Plan Support Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

25. <u>Nature of Consenting Holder Obligations</u>. The obligations of each Consenting Holder hereunder shall be several, and not joint with the obligations of any other Consenting Holder herein, and no Consenting Holder shall be responsible in any way for the performance of the obligations of any other Consenting Holder hereunder. Nothing herein or in any other agreement or document, and no action taken by any Consenting Holder pursuant hereto or thereto, shall be deemed to constitute the Consenting Holders as

17

a group, a partnership, an association, a joint venture or any other kind of entity, or to create a presumption that the Consenting Holders are in any way acting in concert or as a group with respect to such obligations or the transaction contemplated by this Plan Support Agreement.  Each Consenting Holder shall be entitled to protect and enforce its rights, including without limitation, the rights arising out of this Plan Support Agreement, and it shall not be necessary for any other Consenting Holder to be joined as an additional party in the proceeding for such purpose.

26.    <u>Automatic Stay</u>.  The Borrower acknowledges that after the commencement of the Chapter 11 Case, the giving of notice of termination by any Party pursuant to this Plan Support Agreement or a Withdrawal shall not be a violation of the automatic stay provisions of Section 362 of the Bankruptcy Code.

27.    <u>Support Agreement Not a Plan</u>. This Plan Support Agreement does not constitute a plan of reorganization or confirmation thereof under the Bankruptcy Code. The Plan will not become effective unless and until the Bankruptcy Court enters an order confirming the Plan and the Plan becomes effective in accordance with its terms.  This Plan Support Agreement is not intended to constitute a solicitation or acceptance of the Plan.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

*[Signature pages to follow]*

18

IN WITNESS WHEREOF, the party hereto has executed this Plan Support Agreement as of the day and year first above written.

BORROWER:

**CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY, INC.**

By: _____
Print Name:
Title:

*[Consenting Holder signature pages on file with the Debtor.]*