**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re:<br>CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY, INC.,<br>Debtor. | Case No. 23-12607 SAH<br><br>Chapter 11 |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION**

The United States Trustee ("**UST**") submits this objection to Debtor's Second Amended Plan of Reorganization [Doc. 213] (the "**Plan**").

**A.     Background.**

1.     Debtor filed this case on September 29, 2023. (Doc. 1)

2.     The UST filed its notice of appointment of an official committee of unsecured creditors on October 20, 2023. (Doc. 145)

3.     On November 14, 2023 the Court approved Debtor's Third Amended Disclosure Statement, paving the way for Debtor to solicit votes on the Plan.  (Doc. 218)

4.     The Plan seeks to impose third-party releases on (i) unclassified and unimpaired creditors who fail to object; (ii) creditors and shareholders who vote to accept the Plan without marking a separate, later included "Opt Out" provision found on the respective Ballot; and (iii) creditors and shareholders who vote to reject the Plan but fail to check the separate "Opt Out" provision in their Ballot. The Plan defines "Releasing Parties" to mean:

> "**Releasing Parties**" means collectively, the following entities: (i) **each Holder of a Claim or interest who has not chosen, by marking the appropriate box on the Ballot and/or Opt-Out Form, as appropriate, to opt out of the releases provided for in Section 11.10 of this Plan**; (ii) the DIP Lender; (iii) the Existing Bond Trustee; (iv) the Consenting Holders; (v) the Issuer; and (vi) with respect to each of the foregoing entities specified in clauses (i) through (v), such entity and its current and former predecessors,

successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of its respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

(Doc. 213, p. 9, 10.) (Emphasis in original)

5. Section 11.10 of the Plan imposes third-party releases on the "Releasing Parties" as follows:

**11.10 Voluntary Releases by Holders of Claims and Interests. For good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Case, the implementation of the transactions contemplated by this Plan, the distribution of funds under this Plan, on and after the Effective Date, to the fullest extent permitted by applicable law, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for indemnification, tort, contract, violations of federal or state securities laws or otherwise, including those the Debtor or the Estate would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim or Interest, or any other person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Estate, the conduct of the business of the Debtor, the Chapter 11 Case, the purchase, sale or exchange of any bond or other debt instrument, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the administration of Claims and Interests prior to or during the Chapter 11 Case, the negotiation, formulation or preparation of this Plan, the Plan Supplement, the Disclosure Statement or, in each case, related agreements, instruments or other documents, any action or omission as an officer, director, agent, representative, fiduciary, controlling person, member, manager, affiliate or responsible party, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of this Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission is determined by a**

**Final Order to have constituted gross negligence, willful misconduct, fraud, or a criminal act.**

(Doc. 218, p. 35, 36.) (Emphasis in original.)

6.  The scope of the releases is very broad and would cover "any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition)," but would not release claims for acts or omissions constituting actual fraud, willful misconduct, or gross negligence. (Doc. 218, p. 36.)

7.  Debtor claims the releases are voluntary even though many will not have the right to receive a Ballot. These parties include "any and all non-debtor parties to executory contracts," and parties who are "conconclusively presumed to reject this plan." (Doc. 213, p. 32-33, Section 11.4 Binding Nature of Plan.)

8.  Debtor's Plan also contains overly-broad exculpation provisions. The Plan defines "Exculpated Party" as:

> **"Exculpated Party"** means, collectively, in each case in its capacity as such on and after the Petition Date: (a) the Debtor; (b) the Reorganized Debtor; (c) the Existing Bond Trustee; (d) the Consenting Holders; (e) the DIP Lender; (f) the DIP Bondholder Representative; and (g) with respect to each of the foregoing entities in clauses (a) - (f), such entity and its current and former predecessors, successors and assigns, subsidiaries, Affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals.

(Doc. 218, p. 5 - 6.) (Emphasis in original.)

9.  The Plan's Exculpation provision states in full:

> **11.12 Exculpation.** Notwithstanding anything herein to the contrary, as of the Effective Date, the Exculpated Parties will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(e) of the

> Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the solicitation. The Exculpated Parties shall neither have nor incur any liability arising on or after the filing of the Petition to any entity for any act or omission in connection with the conduct of the Chapter 11 Case, including (a) the operation of the Debtor's businesses during the pendency of the Chapter 11 Case; (b) the administration of Claims and Interests during the Chapter 11 Case; (c) formulating, negotiating, preparing, disseminating, implementing, administering, confirming and/or effecting the Disclosure Statement, this Plan, the Plan Supplement, and any related contract, instrument, release or other agreement or document created or entered into in connection therewith (including the solicitation of votes for this Plan and other actions taken in furtherance of Confirmation and consummation of this Plan); (d) the offer and issuance of any securities under or in connection with this Plan; or (e) the administration and adjudication of Claims, ***other than liability resulting from any act or omission that is determined by Final Order to have constituted gross negligence, willful misconduct, fraud or a criminal act***.
>
> The Debtor believes that the Exculpated Parties have, and upon confirmation of this Plan should be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, on account of such distributions should not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.
>
> (Doc. 218, p. 36, 37.) (Emphasis added.)

10. It appears that parties who didn't participate in Debtor's case, including n non-debtor affiliates would receive exculpations.

11. Further, even gross negligence, willful conduct, and criminal behavior would be exculpated so long as it could be hidden until the Final Order is entered.

B.   **The Third Party Releases are Not Truly Consensual**

12. The Plan includes third-party releases that are non-consensual. The releases would be imposed on (i) unclassified and unimpaired claimants who do not object to the third-party releases; (ii) all creditors and shareholders who vote to accept the plan, but who may be confused about their rights under the Opt Out; and (ii) all creditors and shareholders who vote to reject the Plan, again who may be confused about the need for additional action beyond rejecting the Plan.

13. Ultimately, Debtor's and Bondholder's counsel used an Opt Out instead of an affirmative Opt In in the Plan for a very strategic reason. And it wasn't to benefit creditors or Non-Consenting Shareholders.

14. To the extent releases are being imposed on parties without their affirmative consent, they are non-consensual. *See In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) (holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third-party release."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *Emerge Energy Servs. LP*, Case No. 19-11563, 2019 Bankr. LEXIS 3717, *52 (Bankr. D. Del., Dec. 5, 2019) (consent to give third-party releases cannot be inferred "by the failure of a creditor or equity holder to return a ballot or Opt-Out Form"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Elecs. Corp.*, 241

B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *see also Joel Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 688 (E.D. Va. 2022) (holding that "the Bankruptcy Court erred both factually and legally in finding the Third-Party Releases to be consensual. Failure to opt out, without more, cannot form the basis of consent to the release of a claim."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) (under principles of New York contract law, a creditor could not be deemed to consent to third-party releases merely by failing to object to the plan, even when the disclosure statement made it clear that such a consequence would result); *In re Chassix Holdings*, 533 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2015) (limiting third party releases to those who voted to accept the plan, or affirmatively elected to provide releases; consent would not be deemed from creditors who failed to return a ballot, or from unimpaired creditors).

15. In spite of the above Delaware bankruptcy court's holding, it should be noted that not all Delaware bankruptcy judges have required affirmative consent for third-party releases. See, e.g., *In re Indianapolis Downs, LLC*, 486 B.R. 286 (Bankr. D. Del. 2013).

16. Ultimately, requiring affirmative consent from creditors to release their direct claims against non-debtors is the only way to ensure there is true consent, rather than consent assumed by silence. This is because silence could just as easily be caused by factors such as inattentiveness, mistake, or by a solicitation package being misdelivered, other post-office failures, or other unforeseen issues.

17. Further, parties who vote to reject the Plan should not be required to take the redundant step of opting out of the third-party releases. It does not even make sense to assume a party rejecting the Plan would somehow approve the broad releases.

18. Finally, unimpaired or unclassified creditors, or other parties not entitled to vote on the Plan should not be deemed to consent to the third-party releases.

19. Under the holdings of *Emerge Energy*, *Washington Mutual*, and other cases cited above, consent cannot be inferred from the affected parties' failure to opt out or object. Therefore, imposing third-party releases on the affected parties is non-consensual.

20. Lastly, Judge Rasure in the Bankruptcy Court for the Northern District of Oklahoma cited with approval language stating that "the 'validity of the release ... hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order.' Thus, the court must ascertain whether the creditor unambiguously manifested assent to the release of the nondebtor from liability on its debt." *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr. N.D. Okla. 1998).

21. Here, the UST does not believe the releases can be proven to have been given with "unambiguously manifested assent."

C. **The Holders of Claims or Interests that the Plan treats as Unimpaired are in fact Impaired**

22. Whether a creditor is impaired under a plan requires more being paid in full under the plan. *See, In re Chassix Holdings*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015). In *Chassix*, the bankruptcy court stated that "it is difficult to understand how . . . a creditor" can be described as unimpaired if, in exchange for payment of its claim, that creditor "must release a claim against a

third party under a plan. . . ." noted, [m]any courts have held that . . . an impaired class of creditors also is presumed to have consented to any third-party releases. . . ." *Id*.

23. Under *Chassix*, then, "unimpaired creditors should not be deemed to have consented to the third party releases set forth in the Plan." *Id.*

24. In this case, the UST questions whether any "unimpaired" creditors existed considering the releases sought in the Plan. Consequently, all creditors should have been afforded the opportunity to reject the releases.

**D. The Tenth Circuit Correctly Forbids Non-Debtor Releases and Permanent Injunctions.**

25. The Ninth and Tenth Circuit Courts of Appeals have each held that non-debtor releases and permanent injunctions are impermissible under the Bankruptcy Code.

26. According to the Ninth Circuit, "The bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan." *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir.1985). "Section 524(e) precludes discharging the liabilities of nondebtors." *Resorts Internat'l v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1402 (9th Cir.1995) (affirming district court's decision vacating global release provision). These courts find a release and permanent injunction to be indistinguishable from a bankruptcy discharge. *See American Hardwoods, Inc. v. Deutsche Credit Corp.*, 885 F.2d 621, 626 (9th Cir.1989).

27. Likewise, the Tenth Circuit also prohibits non-debtor releases. *See, Landsing Diversified Properties—II v. First Nat'l Bank & Trust Co. of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir.1990) (vacating injunction, following *American*

*Hardwoods* with respect to permanent injunctions of claims against non-debtor), *modified by Abel v. West*, 932 F.2d 898 (10th Cir.1991).

28. Other courts within the Tenth Circuits have followed the prohibition of non-debtor releases:

- *Bill Roderick Distrib., Inc. v. A.J. Mackay Co. (In re A.J. Mackay Co.)*, 50 B.R. 756, 764 (D. Utah 1985) (court deleted provisions of confirmed plan that protected a non-debtor party from liability);

- *In re Digital Impact, Inc.*, 223 B.R. 1, 14 (Bankr.N.D.Okla.1998) (holding that court has neither jurisdiction nor affirmative substantive authority under Bankruptcy Code to release obligations of non-debtors).

**E.     The Debtor's Non-Consensual Third-Party Releases, Exculpation and Injunction Provisions Are Not "Unusual Circumstances" That Would Warrant This Court's Approval Even If the !0th Circuit Allowed such Releases.**

29. Ultimately, even if the Tenth Circuit did permit non-debtor releases, the Debtor has failed to make any showing that the releases sought present a special circumstance, or are otherwise supported by the facts of this case.

30. Assuming the Debtor is successful in persuading the Court that it has subject matter jurisdiction to compel holders of claims or interest to provide non-consensual third-party releases, the imposition of the non-consensual third-party releases are proper only in "unusual circumstances." *Dow Corning*, 280 F.3d 648 (6th Cir. 2002); see also I*n re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2nd Cir. 2005) (holding that a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan").

31. In *Dow Corning*, the Sixth Circuit articulated seven factors that must be present before a bankruptcy court may enjoin the nonconsenting Holder of a Claim or Interest's claims against a non-debtor:

(1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions.

(*Dow Corning*, 280 F.3d at 658.)

32. The *Dow Corning* court held that if a bankruptcy court found all of the foregoing factors to be present, the bankruptcy court could enjoin a non-consenting creditor's claims against a non-debtor. *Id.*

33. The Debtor has not articulated a factual basis to substantiate all seven of the Dow Corning factors to support this Court's approval of the non-consensual third-party releases included in the Plan.

**F.   Relief requested.**

34. The UST requests that the Court deny confirmation of Debtor's Plan.

Respectfully submitted,

s/ Jeffrey E. Tate
Jeffrey E. Tate, OBA #17150
Office of the United States Trustee
215 Dean A. McGee, Room 408
Oklahoma City, OK  73102
(405) 231-5961 /231-5958 [fax]
Jeff.Tate@usdoj.gov