IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re ) | |
| ) | |
| CENTRAL OKLAHOMA UNITED ) | |
| METHODIST RETIREMENT FACILITY, ) | |
| INC. *dba* EPWORTH VILLA ) | Chapter 11 |
| ) | |
| Debtor. ) | **Case No.** 23-12607-SAH |
| ) | |

**LIMITED OBJECTION
OF THE OFFICIAL UNSECURED CREDITORS'
COMMITTEE TO CONFIRMATION OF PLAN
OF REORGANIZATION OF CENTRAL OKLAHOMA UNITED
<u>METHODIST RETIREMENT FACILITY, INC. DBA EPWORTH VILLA</u>**

The Official Unsecured Creditors Committee (the "Committee") submits this limited objection to confirmation of the Second Amended Plan of Reorganization (the "Plan") [Doc. No. 213] filed by the debtor, Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa ("Epworth Villa").

1. This case was commenced by the filing of a voluntary petition pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on October 1, 2023.

2. On October 20, 2023, the Office of the United States Trustee, acting pursuant to 11 U.S.C. § 1102, appointed the Official Unsecured Creditors' Committee to represent the interests of the unsecured creditors in this case.

3. The unsecured creditors of Epworth Villa have been grouped by Epworth Villa into 3 groups: (1) trade creditors of Epworth Villa ("Trade Creditors"), (2) former residents of Epworth Villa who are owed refunds of all or part of their entrance fees and whose former residences have been leased to new occupants ("Refund Creditors"), and (3) former residents of Epworth Villa who are owed refunds of all or part of their entrance fees and whose former residences have not been leased to new occupants ("Former Residents").

4.      According to the most recently filed amended Schedule E/F filed by Epworth Villa [Doc No. 256] ("Schedule E/F"), the claims of Trade Creditors total $2,378,907.79.[1]  The Plan provides for payment of such claims in full "on the Effective Date or as soon as reasonably practicable thereafter."  Plan § 4.3.

5.      According to the Committee's calculation of the claims of Refund Creditors listed in Schedule E/F, such claims total $3,442,311.31.[2]  However, the claim of the Estate of Evangeline Porter in the amount of $207,755.00 is listed in Schedule E/F as a Former Resident claim whereas Epworth Villa has acknowledged to the Committee that it should have been listed as a Refund Creditor Claim.  Furthermore, Epworth Villa has advised the Committee that, subsequent to the filing of the Petition, the units formerly occupied by an additional 5 Former Residents[3] have been sold and the amounts owed to them for refunds ($872,525.00), listed in the schedules as claims of Former Residents, should now be treated under the Plan as claims of Refund Creditors.  Assuming correctness of these numbers, the total amount of claims of Refund Creditors currently should be $4,522,591.31.  The Plan contemplates payment of such claims in full on the Effective Date.  Plan § 4.4.

6.      According to the Committee's calculation of the claims of Former Residents listed in Schedule E/F, such claims total $3,128,234.20.  Such amount contrasts with the amount stated in footnote 4 of the Disclosure Statement as being owed to Former Residents - $2,473,234.20.  Presumably, this amount should be reduced by the claim of the Estate of Evangeline Porter in the

---

[1] The Committee derived this number by subtracting from the total of all unsecured claims ($8,949,453.30) the total of all claims of Refund Creditors ($3,442,331.31) and the total of all claims of Former Residents ($3,128,234.20).  It does not included claims of unsecured creditors listed in Schedule E/F where the amount owed is listed as "Unknown."
[2] This amount differs from the total claims of Refund Creditors noted in footnote 4 of the Disclosure Statement ($3,376,334.28).  The Committee believes the number listed in footnote 4 of the Disclosure Statement is the result of a mathematical error.  The Committee agrees that the total number of such claims listed in Schedule E/F is 35.
[3] The Committee has requested that Epworth Villa identify the 5 creditors but Epworth Villa has yet to do so.

amount of $207,755.00.  Moreover, it is logical to assume that the amount listed in Schedule E/F as being owed to Former Residents should also be reduced by the $872,525.00 noted above as transitioning from Former Resident claims to Refund Creditor claims after the Petition date, although Epworth Villa has not confirmed this assumption nor can the Committee do so based on the limited information it has been provided.  If such reductions are required, the total amount owed to Former Residents would be $2,047,954.20.  The Plan provides for payment of such claims in full after the Effective Date "in accordance with the applicable Residency Agreement," and Epworth Villa asserts that each such claim does not have to be paid until sixty days after the unit formerly occupied by the applicable Former Resident is resold.[4]  Plan § 4.4.

7. The Committee has been unable to discern from the Plan and Disclosure Statement the anticipated source of the funds to be used to pay the claims of Trade Creditors.  Exhibit 5 to the Disclosure Statement, entitled Feasibility Financial Projections, purportedly depicts the sources and uses of funds under the Plan.  That Exhibit does not appear to clearly disclose the source of the $2,378,907.79 that must be paid to Trade Creditors "on the Effective Date or as soon as reasonably practicable thereafter."  The Plan treats the claims of Trade Creditors as unimpaired, and Epworth Villa did not solicit votes of Trade Creditors or provide to them ballots to allow them to vote on the Plan.  Delaying payment to a creditor after the effective date of the plan for an indeterminate period of time constitutes impairment of the claim of such creditor.  *See, e.g.*, *In Re Hardt*, 65 B.R. 697 (Bankr. E.D. Pa. 1986).  To the extent the phrase "as reasonably practicable thereafter" signals an intent by Epworth Villa to pay the claims of Trade Creditors as soon after the Effective Date as funds become available from operations, such treatment is unlikely to leave

---

[4] According to the testimony of Epworth Villa's representative at the first meeting of creditors, if a particular unit is never resold by Epworth Villa (which exclusively controls the marketing of all units in the facility), Epworth Villa never has to refund the entrance fee paid by the Former Resident of such unit.

such claims unimpaired. For such claims to be unimpaired and the Plan to be feasible, it is critical to determine the source of funds to be used to pay the claims of Trade Creditors and the Committee cannot determine the source of the funds from the information thus far provided to the Committee by Epworth Villa.

8. The Plan provides for payment of claims of Refund Creditors from the Entrance Fee Escrow (as that term is defined in the Plan). Plan §§ 4.4 and 6.7. Section 6.7 of the Plan indicates that the balance of the Entrance Fee Escrow as of the Petition Date was $14.8 million. Exhibit 5 to the Disclosure Statement indicates that the starting balance of the Entrance Fee Escrow is $7,361,000, and that an additional $10,176,000 will be transferred to the Entrance Fee Escrow, resulting in a balance of $17,537,000. The Monthly Operating Report for October 2023 filed by Epworth Villa on December 1, 2023 [Doc. No. 245] indicates that the total value of funds held by the Trust Company of Oklahoma (which the Committee believes holds the Entrance Fee Escrow) is $15,559,827.57. Perhaps the variations in these descriptions of the balance of the Entrance Fee Escrow are explicable by timing or other factors, and all of these amounts far exceed the $4,522,591.31 that the Committee believes must be paid to Refund Creditors on the Effective Date of the Plan. Indeed, Exhibit 5 reflect the amount to be paid for entrance fee refunds from the Entrance Fee Escrow is $6,206,000.00. But there are other obligations that under the terms of the Plan must be paid from the Entrance Fee Escrow (see Plan § 6.7), and it is unclear how the increase of the amount that must be paid to Refund Creditors from the $3,442,311.31 shown in footnote 5 of the Disclosure Statement to the $4,522,591.31 the Committee believes is owed will impact feasibility of the Plan.

9. Regarding the claims of Former Residents, the Committee believes that the holders of such claims contest the assertion by Epworth Villa that Epworth Villa never has to pay such

claims if Epworth Villa never resells the units formerly occupied by the Former Residents. The Committee anticipates that some or all of the Former Residents might sue Epworth Villa after confirmation of the Plan to obtain a determination that they are entitled to a refund of their entrance fees within a reasonable time after they vacated their former units. It appears the Plan makes no provision for funds to pay such claims in the event Epworth Villa does not prevail upon its position that it can defer indefinitely refunds of entrance fees as to units that it does not resell.

10. "Section 1129(a)(11) requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." Collier on Bankruptcy ¶ 1129.02[11], citing *Travelers Ins. Co. v. Pikes Peak Water Co.*, 779 F.2d 1456 (10th Cir. 1985). The Committee supports the Plan to the extent it provides for payment in full of all unsecured claims on the Effective Date. Based upon the information thus far provided by Epworth Villa, it is not clear that it is feasible for Epworth Villa to do so.

Respectfully submitted,

*/s/ Ross A. Plourde*
ROSS A. PLOURDE, OBA #7193
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
405/235-9621
405/235-0439 (FAX)
ross.plourde@mcafeetaft.com

***Attorneys for the Official Unsecured Creditors' Committee***

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 12th day of December 2023 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants.

                                              */s/ Ross A. Plourde*